OXENGER v. WARD.

1. NEGLIGENCE—GROSS NEGLIGENCE—"GUEST" STATUTE—MOTOR VEHICLES—WILFUL MISCONDUCT.

Term "gross negligence," as used in "guest" statute (1 Comp. Laws 1929, § 4648), is not limited to subsequent negligence, discovered negligence or peril, humanitarian doctrine, last clear chance doctrine, etc., but it means such degree of recklessness as approaches wanton and wilful misconduct.

2. SAME—PURPOSE OF "GUEST" STATUTE—WILFUL MISCONDUCT.

Purpose of "guest" statute is to absolve owner or driver of motor vehicle from liability for negligence unless he is guilty of wanton and wilful misconduct.

3. MOTOR VEHICLES—GROSS NEGLIGENCE—"GUEST" STATUTE.

Automobile driver who drove across through highway without obeying "stop" sign, resulting in collision and injury to guest passenger in his car, while guilty of ordinary negligence, was not guilty of gross negligence within meaning of "guest" statute (1 Comp. Laws 1929, § 4648), and therefore is not liable for said injuries.

Appeal from Hillsdale; Chester (Guy M.), J. Submitted October 29, 1931. (Docket No. 203, Calendar No. 36,079.) Decided January 4, 1932. Rehearing denied March 3, 1932.

Case by Duane Oxenger, by next friend, against Glenn J. G. Ward for personal injuries received in an automobile collision while a guest in defendant's car. Judgment for plaintiff. Defendant appeals. Reversed, and judgment ordered entered for defendant.

*Paul W. Chase* and *Wilbur D. Grommon,* for plaintiff.

*William C. Searl* and *Merton Fitzpatrick,* for defendant.

BUTZEL, J. Duane Oxenger was three years of age on July 1, 1930. He has brought suit by his father, Ora Oxenger, as next friend, against his uncle, Glenn J. G. Ward, defendant herein. Duane's mother is Ward's sister. On June 29, 1930, Duane, together with his parents and their three other young children, were the guest passengers of defendant. The latter was also accompanied by his wife and their two small children, so that there were ten persons in defendant's Ford car. They left their home in the morning with the intention of visiting a relative in Ohio. Defendant drove the car along the territorial road which runs east and west. He was nearing Hagaman's corners, where the territorial road is intersected by another road running south from Hillsdale. This latter road, herein referred to as the Hillsdale road, had been designated as a through traffic highway and stop signs had been placed on the territorial road 70 feet from the center of the Hillsdale road. Both roads are county roads 24 feet in width. The territorial road is graveled a width of 16 feet and the Hillsdale road 9 feet. There is not much traffic on either road. The road commissioner estimated that the average traffic on the

Hillsdale road was about 300 vehicles a day, or less than one vehicle every two minutes. As defendant's car approached the intersection, he saw a car pass by on the Hillsdale road at a very rapid rate of speed, and remarked: "I'd hate to have that car hit me." The immediate events that followed and defendant's conduct we shall describe in the words of Ora Oxenger who was the main witness for plaintiff:

"Well, what he done, he slowed up somewhat as he approached the stop sign, but he didn't stop, and when he got just about to the corners, why—about ready to go out into the road—he apparently gave it just a little more gas, and I looked and saw a car coming, and I says 'Look out, there comes a car.' Well, of course, the car struck us, we couldn't help but be struck."

When asked at what rate of speed defendant was traveling between the stop sign and intersection, he replied:

"Well, that would be rather hard to tell exactly, but probably was slipping along 20 miles an hour, close to it."

In a signed statement made at the time of the accident, Oxenger stated that defendant was a good, cautious driver and was driving his car with care. He repeated this statement at the trial, but also said that he had changed his mind since the accident. The car going south struck defendant's car as he was driving across the Hillsdale road. The record does not show the injuries to defendant's car. However, Duane's right eye was so badly cut by broken glass that its vision has been permanently destroyed. At the trial, defendant did not take the witness stand nor was any testimony introduced in his behalf. It

was shown without objection that an insurance company was in some manner interested in the case. Judgment upon findings of the trial court of $6,000 was rendered in favor of plaintiff.

The only question involved in the case is whether defendant was guilty of gross negligence. What is known as the "guest" statute was amended by Act No. 19, Pub. Acts 1929 (1 Comp. Laws 1929, § 4648), which limits the liability of the owner or operator of a car to a guest passenger to cases where the owner or operator of the motor vehicle is guilty of gross negligence or wilful and wanton misconduct that contributes to the injury or death or loss which the accident may cause. In the instant case, there is no testimony showing wilful or wanton misconduct on the part of defendant. The question, therefore, is whether he was guilty of "gross negligence," within the meaning of the statute.

In Michigan, some confusion in terminology has arisen from the manner in which the term "gross negligence" has been used in many cases. We shall refer to some of them. In *Bouwmeester* v. *Railroad Co.*, 63 Mich. 557, the defendant was held liable, on the last clear chance doctrine, and it was held that plaintiff's contributory negligence did not preclude his recovery where the action of defendant is wanton, wilful, or reckless, and injury results therefrom. Accord: *Matta* v. *Railway Co.*, 69 Mich. 109 (12 Am. Neg. Cas. 91). In *Battishill* v. *Humphreys,* 64 Mich. 514, and also in *Freeman* v. *Railway Co.,* 74 Mich. 86, 98 (3 L. R. A. 594), the expression "reckless negligence" is used. In *Hughes* v. *Railway Co.,* 78 Mich. 399 (4 Am. Neg. Cas. 79), the term "gross negligence" is used as synonymous with "recklessness."

In *Denman* v. *Johnston,* 85 Mich. 387, 396, the term "gross negligence" was held to mean "an in-

tentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them." This case has been cited and approved of in *Knickerbocker* v. *Railway Co.,* 167 Mich. 596, 602; *Good Roads Construction Co.* v. *Railway Co.,* 173 Mich. 1, 13; *Berry* v. *Railway Co.,* 173 Mich. 181, 187; *Vought* v. *Michigan United Traction Co.,* 194 Mich. 343; *Simon* v. *Railway,* 196 Mich. 586. In *Schindler* v. *Railway Co.,* 87 Mich. 400, the defendant was held guilty of gross negligence, in a case where it was found that defendant's servants were regardless of consequences in shunting the cars in the manner they did, and that these servants and employees of the defendant did not care whether they ran the plaintiff down or not. Accord: *Putt* v. *Railway Co.,* 171 Mich. 216.

In *Buckley* v. *Railroad Co.,* 119 Mich. 583, the term "gross negligence" was applied to defendant's misconduct in a last clear chance situation. In *Labarge* v. *Railway Co.,* 134 Mich. 139, 141 (14 Am. Neg. Rep. 575), the court said:

"It may be conceded that, where one wilfully injures another, the doctrine of contributory negligence is not involved, because the injury is not *negligent,* but *intentional.* Again, where one is seen in danger, though placed there through his own negligence, one who, thus seeing him, omits ordinary care to avert an injury to him, is not alone negligent, but is *wanton,* and, as wantonness of this kind is akin to wilfulness, there is an opportunity for applying the same rule, and defendants have been held liable under such circumstances. And again, we can conceive of a degree of recklessness, which, by reason of its coincidence with *probable disaster,* is closely allied to the foregoing, and should perhaps be gov-

erned by the same rule. * * * In our opinion, the term 'gross,' as applied to negligence, has no such broad legal effect as is contended for in this case; but whenever the defendant sees a plaintiff in danger, or by exercising only ordinary care in the discharge of his duty should discover such danger, in time to avert an injury, and either fails, after discovering it, to take steps to avert it, or fails to discover the danger, the fact that the plaintiff's danger arose, in the first place, through his own negligence, does not prevent his recovery for an injury sustained.''

It was also said that gross negligence is not merely extraordinary negligence. This case was quoted with approval in *Calvert* v. *Railway,* 202 Mich. 311. In *Strong* v. *Railway Co.,* 156 Mich. 66, 74, the term ''gross negligence'' was held to be ''something more than a mere epithet characterizing the degree of negligence of which a defendant may have been guilty.'' In *Buxton* v. *Ainsworth,* 138 Mich. 532 (5 Ann. Cas. 146); *Strong* v. *Railway Co., supra; Fike* v. *Railroad Co.,* 174 Mich. 167; *Kelley* v. *Keller,* 211 Mich. 404, 408 (20 N. C. C. A. 228); and *Krouse* v. *Railway Co.,* 215 Mich. 139, 147, gross negligence was the term applied to the last clear chance situation or to negligence subsequent to the discovery of plaintiff's peril. In *Walter* v. *Railway Co.,* 191 Mich. 181, the court said (quoting *Fike* v. *Railroad Co., supra):*

''It is gross negligence where the wrongdoer, by the exercise of the most ordinary care, should have known of the precedent negligence of the plaintiff and of his peril, and subsequently does him an injury. * * * Gross negligence, therefore, may be: (a) A deliberately wilful act; (b) an act so reckless as to be akin to wilful, and therefore presumed in law to be wilful; (c) a failure to exercise ordinary care to prevent injury to another, after his

peril is, or should have been, discovered in the exercise of ordinary care. Such failure to exercise ordinary care to prevent injury is so reckless that the law presumes it to be wilful; wilfulness or deliberate intent may be inferred from all of the circumstances.''

Owing to the confusion that arose in the terminology used in these cases, as well as others which we have not cited, Mr. Justice Clark, in *Gibbard* v. *Cursan*, 225 Mich. 311, correlated the earlier decisions of the court as far as it was possible, and clearly defined the term ''gross negligence.'' Speaking for the court, he said:

''When will gross negligence of a defendant excuse contributory negligence of a plaintiff? In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury. Strictly, this is the basis of recovery in all cases of gross negligence. 20 R. C. L. p. 145. Such gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule. Other misconduct, different in kind, is also generally and incorrectly known as gross negligence, as we shall see later. *Richter* v. *Harper*, 95 Mich. 221; *Kelley* v. *Keller*, 211 Mich. 404 (20 N. C. C. A. 228); *Fike* v. *Railroad Co.*, 174 Mich. 167; *Knickerbocker* v. *Railway Co.*, 167 Mich. 596; *Buxton* v. *Ainsworth*, 138 Mich. 532 (5 Ann. Cas. 146).''

In *Union Trust Co.* v. *Railway Co.*, 239 Mich. 97, 100 (66 A. L. R. 1515), it was said that subsequent negligence is frequently called gross negligence. In *Essenberg* v. *Achterhof*, 255 Mich. 55, it was said that gross negligence may more properly be termed subsequent negligence.

It is obvious that the term "gross negligence" as used in the guest statute was not limited to subsequent negligence, discovered negligence or peril, humanitarian doctrine, last clear chance doctrine, etc., for they would not be ordinarily involved in cases brought by a guest against the owner or a driver of the car in which he was riding. The very purpose of the guest act was to absolve an owner or driver from liability for negligence except where he is guilty of wanton and wilful misconduct or gross negligence. Upon examination of the meaning of the term "gross negligence," as judicially defined prior to the enactment of the guest act, and upon consideration of the very purpose for which this statute was enacted, and a careful reading of the statute and the correlation therein of the term with that of "wanton and wilful misconduct," we must conclude that the term "gross negligence" means such a degree of recklessness as approaches wanton and wilful misconduct. We do not believe that defendant was guilty of gross negligence under the circumstances of this case. There is no doubt of his being guilty of negligence. Had he driven into a busy arterial highway or a city street without stopping when commanded to do so by an appropriate sign, his liability would have been a question for the jury to determine. Under the facts presented in the instant case, we are constrained to reverse the judgment, with costs to defendant, and remand the case to the trial court with instructions to enter a judgment in favor of defendant.

WIEST, J., concurred with BUTZEL, J. CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred in the result.