### HOLMES v. WESLER.

1. AUTOMOBILES—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—FINDING OF JURY—EVIDENCE—APPEAL AND ERROR.
    Jury's finding of gross negligence or wilful and wanton misconduct on part of host motorist in action against him for injuries by guest passenger *held,* not justified under record presented on appeal from judgment for defendant *non obstante veredicto* even when record is viewed in light most favorable to plaintiff (1 Comp. Laws 1929, § 4648).

2. SAME—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.
    Host motorist whose car, while out of control, collided with telephone pole on left of road about 900 feet beyond and down a grade from curve where right-hand wheels had gone off pavement as car was going approximately 75 miles per hour *held,* guilty of ordinary negligence but not of gross negligence or wilful and wanton misconduct so as to be liable under guest passenger act (1 Comp. Laws 1929, § 4648).

3. Same—Curve—Speed—Wilful and Wanton Misconduct.
   Failure of automobile driver to see curve in time to have slowed
       down to safely make turn does not constitute wilful and wan-
       . ton misconduct (1 Comp. Laws 1929, § 4648).

Potter, J., dissenting.

Appeal from Allegan; Miles (Fred T.), J. Submitted January 15, 1936. (Docket No. 29, Calendar No. 38,651.) Decided March 2, 1936.

Case by Waldo Holmes against Ernest Wesler for personal injuries sustained while a guest passenger in defendant's automobile. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Leo W. Hoffman* (*Carl E. Hoffman* and *Clare E. Hoffman,* of counsel), for plaintiff.

*L. J. Carey* and *George J. Cooper,* for defendant.

North, C. J. On April 3, 1935, about 10 p. m., plaintiff was riding as a guest passenger in the rear seat of defendant's Ford V8, 1935 model. As defendant was driving north from Kalamazoo on US-131 and about four miles out of Kalamazoo, his automobile collided with a telephone pole on the westerly side of the highway and plaintiff sustained injuries. Plaintiff, seeking in this suit to recover damages, alleges that defendant in driving his automobile at a high rate of speed, approximately 70 to 75 miles per hour around a curve, in driving at such a rate that he was unable to bring the automobile to a stop within the assured clear distance ahead, and in not applying his brakes, was guilty of gross negligence and of wilful and wanton misconduct which caused plaintiff's injuries. The jury

rendered a verdict for plaintiff; but upon motion defendant had judgment *non obstante veredicto.* This holding was on the ground that under the requirements of the so-called guest act (1 Comp. Laws 1929, § 4648) plaintiff did not make a case for the jury, there being no testimony tending to show defendant was guilty of gross negligence or of wilful or wanton misconduct. Plaintiff has appealed.

Briefly stated, the facts are that as plaintiff and defendant, together with a third party, were starting home from the city of Kalamazoo a conversation arose which involved something of a discussion as to the relative merits of a Ford and a Chevrolet automobile, plaintiff stating that he preferred a Chevrolet. Thereupon, according to plaintiff's testimony, defendant said he would show plaintiff "what a Ford could do in cutting the corner, cutting a curve;" and he proceeded to do so. Approximately 900 feet south of the point of collision there is a curve in the highway. Defendant was familiar with this road and knew the curve was there. In appellant's brief it is stated: "The curve was gradual and it is also down grade. There is nothing about the curve or the road which requires any extraordinary care to negotiate with safety." Plaintiff testified: "There is nothing sharp whatever about this curve; (it) is a quarter or half mile long, somewhere in there. There is quite a few curves right in there." The highway was paved to a width of 20 feet with gravel shoulders four to six feet in width. As the parties approached the curve defendant was driving between 70 and 75 miles per hour and as he "cut the corner" defendant stepped on the accelerator. The right-hand wheels of the car went off the pavement onto the gravel shoulder, which was somewhat lower than the surface of the

pavement. Plaintiff testified the automobile was going 80 miles an hour at the time it went back onto the pavement; and that after it was back on the pavement it started to swerve back and forth, and its speed increased. When asked how far the car went before it collided with the telephone pole, plaintiff said: "Well, it did not seem like it went very far; it happened quick." Defendant's automobile continued on the pavement for some distance, then it again went off the pavement on the left-hand or westerly side and collided with a telephone pole with such force that the pole was broken off. The following is from plaintiff's testimony:

"*Q.* What do you mean when you say that he (defendant) stepped on the accelerator and accelerated his speed after he got back on the road? * * *

"*A.* Why naturally, a man, gets into a hole like that, that is the first thing he does, steps on his accelerator, and that is what he done. * * * I say, that is the first thing they do when they get excited. * * * No one in the car said anything about speed that I know of. Everything was going all right, until things happened. * * *

"*Q.* Just what do you blame this accident on, Mr. Holmes?

"*A.* Speed and careless driving.

"*Q.* In what way was it careless driving?

"*A.* Well, I say it would be careless driving where a man has got his car out of control that can't get it back into control.

"*Q.* Well, in what way was Mr. Wesler careless?

"*A.* By getting off the pavement and losing control of his car at that time.

"*Q.* Well, how did he lose control of his car?

"*A.* I couldn't say; he got off the pavement, that is all; he cut the corner too short.

"*Q.*  He cut the corner too short and got off the pavement?

"*A.*  And got off the pavement.

"*Q.*  And you say that is what caused the accident?

"*A.*  That with combined speed. * * * And not getting the car back under control. * * *

"*Q.*  What should Mr. Wesler have done that he didn't do?

"*A.*  Well, I don't know.  He could have slowed his speed up.

"*Q.*  You say he should have slowed his speed up?

"*A.*  Yes.

"*Q.*  His car was weaving back and forth, wasn't it?

"*A.*  Certainly.

"*Q.*  He did use the brakes, didn't he?

"*A.*  I don't know that he did.

"*Q.*  You don't know whether he did or not?

"*A.*  No, I don't say he used the brakes at all. * * *

"*Q.*  You don't know whether he did or not, do you?

"*A.*  I don't.  I know the car didn't slow up.

"*Q.*  You say it happened as quick as the snap of your fingers.  How much do you suppose a man could do in that time?

"*A.*  Couldn't do much, of course.  I exaggerated when I say the snap of your fingers.  It went quick, naturally would."

When defendant first cut the curve the right-hand wheels of his machine went off the pavement. Immediately after the car was brought back onto the pavement it began to swerve. After the accident it was discovered that the right-hand rear tire was flat. From the time the car began to swerve to the point of collision it was wholly out of control. De-

fendant testified he tried to get the car straightened up but could not do so and that he did not "bear down" on the brakes because he knew the car "would turn turtle if I did." Defendant was an experienced automobile driver. His Ford V8 was comparatively new, and no complaint is made of its equipment. Nor is there anything in the record to indicate that the pavement, which was dry, was out of repair. Notwithstanding the point of impact was approximately 900 feet north of the curve, it appears from plaintiff's own testimony, as well as from other testimony in the record, that the collision with a telephone pole occurred almost instantly after defendant lost control of his car, and was wholly beyond the power of defendant to prevent.

Careful consideration of this record, viewed in the light most favorable to plaintiff, fails to disclose any testimony which would justify a finding by a jury that defendant was guilty of gross negligence, or of wilful or wanton misconduct within the meaning of those terms as interpreted by former decisions of this court. See *Willett* v. *Smith,* 260 Mich. 101; *McLone* v. *Bean,* 263 Mich. 113; *Johnson* v. *Fremont Canning Co.,* 270 Mich. 524; *Sherman* v. *Yarger,* 272 Mich. 644. It is not claimed, nor is there any testimony tending to show, that defendant intentionally drove too near to and off the right-hand side of the paved portion of the highway. It may be conceded that defendant was driving his car carelessly and that this regrettable accident would not have occurred had defendant not carelessly driven his automobile off the right-hand side of the pavement; but in doing so he was guilty only of ordinary negligence, not of gross negligence, or wilful or wanton misconduct. When the car was returned to the paved portion of the highway, it was wholly

out of defendant's control, and the accident was then unavoidable. It was caused by ordinary negligence, nothing more.

"Failure of automobile driver to see curve in time to have slowed down to safely make turn does not constitute wilful and wanton misconduct." *Elowitz* v. *Miller* (syllabus), 265 Mich. 551.

"Whether a turn of the road can be made with reasonable safety at any particular speed depends, of course, upon the character and condition of the road and the skill of the driver. We cannot draw a line beyond which more speed in making a turn departs from negligence and becomes wilful and wanton misconduct." *Bobich* v. *Rogers,* 258 Mich. 343.

"Automobile driver *held,* not guilty of wilful and wanton misconduct under the guest passenger act (1 Comp. Laws 1929, § 4648), as a matter of law, where his practically new car skidded off road half way around a curve near foot of hill although there was evidence that passengers had complained about excessive speed (about 60 miles per hour), that brakes were not working properly and that plaintiff rode with defendant after the accident, the case being controlled by *Elowitz* v. *Miller,* 265 Mich. 551." *Turney* v. *Meyer* (syllabus), 266 Mich. 87.

The judgment entered in the circuit court is affirmed, with costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred with NORTH, C. J.

POTTER, J. I dissent from the reasoning and conclusions herein.