RILEY *v.* WALTERS.

1. AUTOMOBILES—SPEED—CURVES—WILFUL AND WANTON MISCON-
DUCT.
    Negligence of automobile driver in making turn on dry road bed
    in warm weather at high speed notwithstanding conversation of
    plaintiff guest passenger and another with defendant indicating
    the former's desire for slower speed *held,* not wilful or wanton
    misconduct entitling plaintiff to recovery under guest passenger
    act (1 Comp. Laws 1929, § 4648).

2. SAME—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—
GUEST PASSENGER ACT.
    Term "gross negligence," as used in guest passenger act, does
    not mean something of less degree than wilful or wanton mis-
    conduct (1 Comp. Laws 1929, § 4648).

3. NEGLIGENCE—COMPARATIVE NEGLIGENCE—DEGREES OF NEGLIGENCE.
    Comparative negligence or degrees of negligence are not recog-
    nized in this jurisdiction.

4. AUTOMOBILES—GUEST PASSENGER ACT—GROSS NEGLIGENCE.
    Gross negligence, as used in the guest passenger act, is such negli-
    gence as is characterized by wantonness or wilfulness (1 Comp.
    Laws 1929, § 4648).

Appeal from Oakland; Gillespie (Glenn C.), J.
Submitted January 22, 1936. (Docket No. 127, Cal-
endar No. 38,801.) Decided December 8, 1936.

Case by Ward Riley against Donald Walters for
personal injuries sustained while a passenger in de-
fendant's automobile. Directed verdict and judg-
ment for defendant. Plaintiff appeals. Affirmed.

*Hugh K. Davidson* and *Walter M. Nelson,* for
plaintiff.

*William J. Eggenberger,* for defendant.

POTTER, J.   Plaintiff brought suit against defendant to recover damages resulting from personal injuries.   He alleged he was riding with the defendant July 9, 1934, at about 11 p. m., was without negligence or contributory negligence on his part, and that the defendant operated his automobile, in which the parties were riding, in a careless, reckless and negligent manner and, as a result of the negligence of the defendant, plaintiff suffered painful, permanent and disfiguring injuries.   Plaintiff's declaration also alleged defendant operated the motor vehicle, in which plaintiff and defendant were riding, carelessly, in wilful and wanton disregard of the rights and safety of plaintiff.   There are some immaterial allegations in the declaration.   Defendant filed an answer denying all the material allegations contained in plaintiff's declaration.

On the day preceding the night on which the injury to plaintiff occurred, a friendly ball game had been played between young men in the neighborhood of Maybury sanitarium and the employees of the sanitarium.   After the ball game, the parties in question went to the home of one Ivan Ely who was employed in the Maybury sanitarium.   They stayed there a short time and then got into the car of defendant which had been left parked there and went to Bud Newton's place, a beer parlor, where they stayed an hour and a half.   From there they came back to Ely's, sought to get in touch with him, Ely's father suggested that Ivan might be at the Maybury sanitarium.   The parties started to the sanitarium. At a red light, defendant stopped his automobile and plaintiff got out of the automobile but at the solicitation of the defendant got back in and rode to the sanitarium to aid defendant in looking for Ivan Ely. They were unable to locate Ivan Ely and then

started back toward Northville. In going around a curve, the accident occurred.

In his opening statement, counsel for plaintiff said, after stating the facts:

"We claim on this statement of facts, * * * that Ward Riley was not a guest of Donald Walters but that he was in the car in the service of Donald Walters, the driver and owner of the car, doing an errand and a service for Walters, that there was no purpose for * * * Riley to go to the sanitarium except to accommodate Mr. Walters, that, therefore, Mr. Walters owed this plaintiff the duty to drive with due care and not to take any unnecessary risks and we claim he violated and disregarded that duty in the manner in which he drove this car, that these injuries are the result of that neglect."

At the conclusion of the opening statement of counsel for plaintiff, defendant moved for a directed verdict based thereon, stating:

"There is no claim made in the opening statement that this accident was due to any wilful or wanton misconduct on the part of this defendant; the relationship as between the parties as made in the opening statement and as may be inferred from the reply filed to the defendant's answer clearly shows a host and guest relationship, there is no claim of any consideration, the relationship between the parties is primarily predicated upon a friendship between them; now, the degree of that friendship has no bearing in this case."

The court overruled this motion. The testimony was taken showing substantially the facts above indicated and, at the conclusion of the testimony of plaintiff, the motion for directed verdict was made by defendant's counsel, in which he stated:

"I assume from the opening statement made and the proofs offered there is no claim of any gross

negligence and wilful and wanton misconduct and that they claim that the plaintiff in this case was not a guest and that, on the contrary, that he was a servant of the defendant, was out in the car performing an errand and a service of some kind to the defendant, for that reason is not a guest and does not go under the provisions of the guest law.''

This motion to direct a verdict was argued whereupon the court directed a verdict upon the ground there could be no recovery unless plaintiff could establish he was not a guest passenger in defendant's car, the court holding that under the undisputed facts he was a guest passenger.

Plaintiff contends he was not a guest passenger of the defendant within the meaning of 1 Comp. Laws 1929, § 4648, and that defendant was guilty of gross negligence and wilful and wanton misconduct within the meaning of the same section. There is no question but that plaintiff was being transported by defendant in his automobile without payment or charge for his transportation. Plaintiff contends his relation as a guest of defendant terminated at the red street light when he got out of defendant's automobile, and that, when he got back in, his relation to defendant changed to one of employment. These young men, after their visit to the beer parlor, were skylarking around trying to find Ivan Ely and his girl friend, and, failing to find them, decided to go home and plaintiff got back into defendant's automobile at or near the sanitarium for that purpose and was then just as much a guest within the meaning of the statute when the accident occurred as he had been before he reached the red light.

Appellant relies upon *Monison* v. *McCoy*, 266 Mich. 693, affirmed on rehearing, 266 Mich. 700. But in this case, there was no contractual relation between the parties, no relation of master and servant,

or of employer and employee. At the time of the injury plaintiff was not riding with defendant as an incident to any employment or in going to or coming from such employment. He was a voluntary guest passenger riding home.

In *Breger* v. *Feigenson Brothers Co.*, 264 Mich. 37, there was testimony of express direction to the driver of the truck from his employer not to employ plaintiff, but from the multiplicity of circumstances when plaintiff was employed, notwithstanding these instructions if they were given, there was a fair inference such instructions were waived and that defendant had knowledge of plaintiff's employment. The record here shows a mere social relationship, mutual companionship and a united search for mutual pleasure.

Gross negligence is a term well known to the law of Michigan. *Bouwmeester* v. *Railroad Co.*, 63 Mich. 557; *Battishill* v. *Humphreys*, 64 Mich. 514; *Cooper* v. *Railway Co.*, 66 Mich. 261 (11 Am. St. Rep. 482); *Matta* v. *Railway Co.*, 69 Mich. 109 (12 Am. Neg. Cas. 91); *Freeman* v. *Railway Co.*, 74 Mich. 86 (3 L. R. A. 594); *Hughes* v. *Railway Co.*, 78 Mich. 399 (4 Am. Neg. Cas. 79); *Robinson* v. *Railroad Co.*, 79 Mich. 323 (19 Am. St. Rep. 174); *Denman* v. *Johnston*, 85 Mich. 387; *Schindler* v. *Railway Co.*, 87 Mich. 400; *Montgomery* v. *Muskegon Booming Co.*, 88 Mich. 633 (26 Am. St. Rep. 308); *Richter* v. *Harper*, 95 Mich. 221; *Frost* v. *Railroad Co.*, 96 Mich. 470; *Montgomery* v. *Railway Co.*, 103 Mich. 46 (29 L. R. A. 287); *Labarge* v. *Railroad Co.*, 134 Mich. 139 (14 Am. Neg. Rep. 575); *Buxton* v. *Ainsworth*, 138 Mich. 532 (5 Ann. Cas. 146); *Strong* v. *Railway Co.*, 156 Mich. 66; *Knickerbocker* v. *Railway Co.*, 167 Mich. 596; *Putt* v. *Railway Co.*, 171 Mich. 216; *Good Roads Construction Co.* v. *Railway*

*Co.,* 173 Mich. 1; *Berry* v. *Railway Co.,* 173 Mich. 181; *Wexel* v. *Railway Co.,* 190 Mich. 469; *Walter* v. *Railway Co.,* 191 Mich. 181; *Vought* v. *Michigan United Traction Co.,* 194 Mich. 343; *Simon* v. *Railway,* 196 Mich. 586; *Calvert* v. *Railway,* 202 Mich. 311; *Gibbard* v. *Cursan,* 225 Mich. 311; *Patton* v. *Railway Co.,* 236 Mich. 173, 238 Mich. 397; *Flanagan* v. *Arnold,* 236 Mich. 180; *People* v. *Campbell,* 237 Mich. 424; *Union Trust Co.* v. *Railway Co.,* 239 Mich. 97 (66 A. L. R. 1515); *Lett* v. *Summerfield & Hecht,* 239 Mich. 699; *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179); *Devlin* v. *Morse,* 254 Mich. 113; *Oxenger* v. *Ward,* 256 Mich. 499; *Finkler* v. *Zimmer,* 258 Mich. 336; *Bobich* v. *Rogers,* 258 Mich. 343; *Willett* v. *Smith,* 260 Mich. 101; *McLone* v. *Bean,* 263 Mich. 113; *Findlay* v. *Davis,* 263 Mich. 179; *Elowitz* v. *Miller,* 265 Mich. 551; *Turney* v. *Meyer,* 266 Mich. 87; *Boos* v. *Sauer,* 266 Mich. 230; *Johnson* v. *Fremont Canning Co.,* 270 Mich. 524; *Sherman* v. *Yarger,* 272 Mich. 644; *Perkins* v. *Roberts,* 272 Mich. 545; *Crowley* v. *Upleger,* 273 Mich. 541; and many other cases.

In *Denman* v. *Johnston, supra,* gross negligence was defined to mean "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them." This definition was approved in *Schindler* v. *Railway Co., supra; Putt* v. *Railway Co., supra; Wexel* v. *Railway Co., supra;* and *Patton* v. *Railway Co., supra.*

In *Simon* v. *Railway Co., supra,* gross negligence was defined as "the intentional failure to perform a manifest duty, in wanton, wilful, or reckless disregard of the consequences, as affecting the life or

property of another," etc., the definition differing from the preceding one by including the terms "wanton" and "wilful."

This court has sought to enumerate the essential elements of wilful and wanton misconduct. In *Willett v. Smith, supra,* these elements were said to be:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

This analysis of the elements of wilful and wanton misconduct is reiterated in *McLone v. Bean, supra; Elowitz v. Miller, supra; Johnson v. Fremont Canning Co., supra; Sherman v. Yarger, supra;* and possibly in other cases.

If one is driving an automobile at a high rate of speed along a familiar highway in which is a turn, certainly the driver has knowledge of a situation requiring ordinary care and diligence to avoid injury to his guest in making such turn. He has in the ordinary automobile the usual braking devices with which automobiles are equipped, and the ability to apply them to slacken the pace of the automobile and avoid the possibility of resulting injury to his guest by the use of the most ordinary diligence in applying the means at hand, taking his foot off the accelerator and applying the brakes, to slacken the speed of his automobile. Anyone with sense enough to be permitted a license to operate a motor vehicle knows that to attempt to make a turn in an automobile going 70 miles an hour or more is fraught with the possibility of disaster, and when, therefore, a

driver fails to slow down to a safe rate of speed, but, on the contrary, accelerates his speed in going around turns and corners, and injury to a guest results, there is room for the jury to find the defendant guilty of wilful and wanton misconduct if the analysis above quoted of gross negligence is correct, though this court has held it would not be so in many cases.

This attempted analysis and enumeration of the essential elements of wilful and wanton misconduct is suggestive, rather than persuasive,—indicative, not conclusive. Ordinary negligence fulfills all the requirements of this definition or enumeration and, by the application of the test prescribed, thereby becomes synonymous with gross negligence. If the test above mentioned is properly stated and includes all the essential elements of gross negligence, such cases as *Bobich* v. *Rogers, supra; Elowitz* v. *Miller, supra;* and *Turney* v. *Meyer, supra,* were wrongly decided because the holdings therein are inconsistent with the test above prescribed.

The so-called "guest act" first made its appearance in this State as a part of Act No. 19, Pub. Acts 1929, by which a proviso was attached to section 29 of the motor vehicle law, now standing as a part of 1 Comp. Laws 1929, § 4648, as follows:

"No person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

Since the guest statute was enacted, there has been a line of cases holding that gross negligence requires wilful or wanton misconduct. *Grabowski* v. *Seyler,* 261 Mich. 473; *Findlay* v. *Davis, supra; Boos* v. *Sauer, supra.*

There is in this jurisdiction no such thing as gross negligence in the sense of greater negligence or more negligence than ordinary. *Grabowski* v. *Seyler, supra; Bobich* v. *Rogers, supra.*

There are no degrees of negligence and no different kinds of negligence. *Schlacter* v. *Harbin,* 273 Mich. 465.

Gross negligence has a definite meaning, when referred to, as authorizing a recovery for a negligent injury notwithstanding the contributory negligence of the plaintiff. *Denman* v. *Johnston, supra; Schindler* v. *Railway Co., supra; Putt* v. *Railway Co., supra; Wexel* v. *Railway Co., supra; Simon* v. *Railway, supra; Patton* v. *Railway Co., supra.*

Precedent negligence of plaintiff, though a contributing cause of injury, does not bar recovery when there is independent, subsequent negligence by the defendant. *Richter* v. *Harper, supra.* This rule has been frequently applied where unattended railroad cars have been shunted along a track. *Battishill* v. *Humphreys, supra; Cooper* v. *Railway Co., supra; Schindler* v. *Railway Co., supra; Labarge* v. *Railroad Co., supra;* and other cases where, though the plaintiff is in a place of danger by reason of his own negligence, he is run down and injured by a train, street car or motor vehicle, the driver of which either knew, or in the exercise of reasonable diligence ought to have known, of the likelihood of plaintiff's injury. *Montgomery* v. *Railway Co., supra.*

"Before gross negligence can be made out which warrants recovery notwithstanding the precedent

contributory negligence of the plaintiff, the negligence of the latter must have been discovered, or the defendant must have neglected the most ordinary precaution in failing to discover it." *Buxton* v. *Ainsworth, supra.*

"Where plaintiff's negligence contributed to his injury, he cannot recover 'without intentional wrong' on the part of the defendant. * * * 'Without wanton or intentional wrong.' " *Putt* v. *Railway Co., supra.*

The older negligence cases in this State where recovery was permitted notwithstanding plaintiff's contributory negligence have been cases where defendant's negligence was characterized as reckless, wanton and malicious, *Battishill* v. *Humphreys, supra;* wanton, wilful, reckless and negligent, *Bouwmeester* v. *Railroad Co., supra;* reckless and wanton, *Hughes* v. *Railway Co., supra.* And this doctrine was extended by a majority of this court to apply where a plaintiff was invited into a place of known danger by the affirmative action and assurance of defendant. *Patton* v. *Railway Co., supra.*

Gross negligence rests on the assumption the defendant did know the probable results of his acts and was recklessly or wantonly indifferent to the results. *People* v. *Campbell, supra.*

It is not often the antecedent negligence of a gratuitous guest passenger will contribute to an injury caused by the subsequent negligence of an owner or driver of a motor vehicle as the proximate cause of the injury. *Boyle* v. *Moseley,* 258 Mich. 347.

Gross negligence as applied to the guest statute, where the antecedent negligence of the guest contributing to the injury is not present, is a misnomer and, if used, is used as synonymous with wilful and wanton misconduct which in reality transcends neg-

ligence and is characterized by intent,—by wilfulness or wantonness. *Gibbard* v. *Cursan, supra; Union Trust Co.* v. *Railway Co., supra; Oxenger* v. *Ward, supra; Finkler* v. *Zimmer, supra; Bobich* v. *Rogers, supra; Boyle* v. *Moseley, supra; Wyma* v. *Van Anrooy,* 260 Mich. 295; *Grabowski* v. *Seyler, supra; Mater* v. *Becraft,* 261 Mich. 477; *Findlay* v. *Davis, supra; Boos* v. *Sauer, supra.*

It was once said by this court, though there was a dissenting opinion, that "gross negligence, subsequent negligence, antecedent negligence, discovered negligence, discovered peril, last clear chance, intervening negligence, supervening negligence, humanitarian rule, are the same thing," *Finkler* v. *Zimmer, supra,* though in *Oxenger* v. *Ward, supra,* it was said:

"It is obvious that the term 'gross negligence' as used in the guest statute was not limited to subsequent negligence, discovered negligence or peril, humanitarian doctrine, last clear chance doctrine, etc., for they would not be ordinarily involved in cases brought by a guest against the owner or a driver of the car in which he was riding. The very purpose of the guest act was to absolve an owner or driver from liability for negligence except where he is guilty of wanton and wilful misconduct or gross negligence. Upon examination of the meaning of the term 'gross negligence,' as judicially defined prior to the enactment of the guest act, and upon consideration of the very purpose for which this statute was enacted, and a careful reading of the statute and the correlation therein of the term with that of 'wanton and wilful misconduct,' we must conclude that the term 'gross negligence' means such a degree of recklessness as approaches wanton and wilful misconduct."

Though the language of the two cases last above cited may have been too sweeping, the rule seems to be fixed (a) that gross negligence, though perhaps correctly defined in the cases first above cited, is a term applied generally where the injury to the plaintiff results from the negligent conduct of the defendant in intentionally or wantonly or wilfully or recklessly injuring another in a place of known danger where the defendant knew, or might have known, of the danger and where he could have avoided the injury to the plaintiff by the use of ordinary care and diligence,—cases where the defendant "did it on purpose;" (b) the gross negligence of the defendant will warrant a recovery, by a plaintiff injured thereby, against him, notwithstanding plaintiff got into a place of danger, where he was subsequently injured, by reason of his own negligence; (c) in as much as a gratuitous guest passenger is seldom in a place of known danger by his own contributory negligence, the term "gross negligence" as used in a majority of the cases where the term has been defined in this State has no application to the term as ordinarily used under the guest statute where it is used as synonymous with wilful and wanton misconduct.

This case is controlled by *Bobich* v. *Rogers, supra; Mater* v. *Becraft, supra; Elowitz* v. *Miller, supra.*

Judgment affirmed, with costs.

SHARPE and TOY, JJ., concurred with POTTER, J.

WIEST, J. The judgment should be affirmed. *Van Blaircum* v. *Campbell,* 256 Mich. 527; *Oxenger* v. *Ward,* 256 Mich. 499; *Finkler* v. *Zimmer,* 258 Mich. 336; *Bobich* v. *Rogers,* 258 Mich. 343; *Wyma* v. *Van Anrooy,* 260 Mich. 295; *Grabowski* v. *Seyler,*

261 Mich. 473; *Mater* v. *Becraft,* 261 Mich. 477; *Mogill* v. *Resnick,* 263 Mich. 103; *Fink* v. *Dasier,* 273 Mich. 416; *Schlacter* v. *Harbin,* 273 Mich. 465.

At the time and place of the accident the weather was warm and the road bed dry. Plaintiff testified that as the automobile approached the curve he looked at the speedometer, and the car was going between 65 and 70 miles per hour, and he said to his companion on the seat: "Harold, I hope he slows down," and Harold said, "So do I," and then defendant said: "He thought he could handle the car all right."

In *Bobich* v. *Rogers, supra,* the claim was made that defendant drove his automobile at such a high rate of speed that he was unable to make a sharp turn without losing control of his car and, as a consequence, the car left the roadway and overturned. We said:

"Whether a turn of the road can be made with reasonable safety at any particular speed depends, of course, upon the character and condition of the road and the skill of the driver. We cannot draw a line beyond which mere speed in making a turn departs from negligence and becomes wilful and wanton misconduct. Conceding that defendant was negligent in making the turn at high speed, it would not constitute wilful and wanton misconduct."

In *Findlay* v. *Davis,* 263 Mich. 179, Mr. Justice POTTER, speaking for the court, said:

"This court has frequently held, in construing the guest act, the term 'gross negligence' does not mean something of a less degree than wilful or wanton misconduct. *Oxenger* v. *Ward,* 256 Mich. 499; *Bobich* v. *Rogers,* 258 Mich. 343; *Mater* v. *Becraft,* 261 Mich. 477."

In *Schlacter* v. *Harbin, supra,* we said:

"As we have frequently stated, we do not recognize comparative negligence or various degrees of negligence. We have attempted heretofore to define gross negligence, a confusing term, as used in the guest statute. 1 Comp. Laws 1929, § 4648; *Finkler* v. *Zimmer,* 258 Mich. 336. Gross negligence is such negligence as is characterized by wantonness or wilfulness."

Affirmed, with costs to defendant.

NORTH, C. J., and FEAD, BUTZEL and BUSHNELL, JJ., concurred with WIEST, J.