## MITCHELL v. WALTERS

(No. 2136; March 12, 1940; 100 Pac. (2d) 102)

318

For the appellant, there was a brief and oral argument by *M. L. Bishop, Jr.* of Casper.

320

For the respondent, there was a brief and oral argument by *Burt Griggs* of Buffalo.

RINER, Chief Justice.

This is a companion case argued at the same hearing with our number 2137, Burton S. Hill, Administrator of the Estate of Amos J. Thornber, deceased, v. Fred J. Walters, this day decided. The alleged cause of action is predicated upon the facts set forth in the opinion filed in that case, except that this proceeding is instituted by the guardian of Marvin Mitchell as plaintiff against Fred J. Walters as defendant. It will be unnecessary to again set forth the facts aforesaid, and reference will be made to them as delineated in the companion case as may be necessary to a determination of this litigation, the parties having so stipulated herein. It will be recalled that Mitchell was riding as

a non-paying guest of Walters and was severely injured as a result of the collision of the Walters automobile with that driven by Dr. Thornber, as described in the opinion mentioned above.

Plaintiff's amended petition in substance charges the defendant Walters with reckless disregard of and reckless indifference to plaintiff's safety by driving a distance of 350 feet and to the left of the center line of the highway unlawfully and willfully and at a dangerous and excessive rate of speed, to-wit, sixty miles per hour, in endeavoring to pass the car having the foreign license referred to in Case No. 2137, and thereby caused the collision with the Thornber Lincoln-Zephyr vehicle, and that the defendant saw, or in the exercise of slight care could have seen the vehicle last mentioned, and that "because of defendant's gross negligence and willful and negligent misconduct, in absolutely disregarding plaintiff's safety, as above described, plaintiff suffered serious and permanent injury." Regarding the negligence or willful misconduct charged, the defendant's answer interposed a general denial.

The district court of Johnson County, to which the case was tried without a jury, found generally in favor of the defendant and against the plaintiff "in all the issues," and adjudged that plaintiff's petition be dismissed and that the defendant recover his costs. The unsuccessful litigant has brought the record here for review by direct appeal.

The cause is to be considered, as both parties concede, in connection with the provisions of Section 72-701 W. R. S., 1931, which reads:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such

motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." This law was enacted by the Twenty-first State Legislature and passed through that body as House Bill No. 4. It was approved by the Governor of this State January 29, 1931. An inspection of the House and Senate Journals of that session discloses that House Bill No. 4 passed the House of Representatives January 20, 1931, and the Senate January 23, 1931, being signed by the Speaker of the House as House Enrolled Act No. 2 on January 24, 1931. It appears as Chapter 2, Section 1 of the Session Laws of Wyoming, 1931, and was thereafter incorporated in the Wyoming Revised Statutes, 1931, as Section 72-701 thereof. The language of the law appears to have been taken verbatim from the proviso added by the Legislature of the State of Michigan through Act No. 19 P. A. 1929, by way of amendment to Act No. 302 P. A. 1915, for the regulation of motor vehicles and their operators upon the highways of that state.

The Michigan statute seems to have been construed to some extent and its constitutionality upheld by the Supreme Court of Michigan in the case of Naudzius v. Lahr, 253 Mich. 216, 234 N. W. 581, decided January 23, 1931. No earlier decision in that State, undertaking to place a construction upon the terms of the proviso has been drawn to our attention. That being so it is apparent from what has been above set forth as to the legislative history of Section 72-701, supra, that while the Wyoming Legislature borrowed the language of the proviso aforesaid, that body was not then acquainted with the construction ultimately placed upon the language of the proviso by the Supreme Court of Michigan. That tribunal, by a number of subsequent decisions, was held, as stated in Findlay v. Davis, 263 Mich. 179, 248 N. W. 588, that "the term 'gross negli-

gence' does not mean something of a less degree than willful or wanton misconduct," citing Oxenger v. Ward, 256 Mich. 499, 240 N. W. 55; Bobich v. Rogers, 258 Mich. 343, 241 N. W. 854; Mater v. Becraft, 261 Mich. 477, 246 N. W. 191.

In Schlacter v. Harbin, 273 Mich. 465, 263 N. W. 431, 432, the court said:

"As we have frequently stated, we do not recognize comparative negligence or various degrees of negligence. We have attempted heretofore to define gross negligence, a confusing term, as used in the guest statute. Section 4648, C. L. 1929. Finkler v. Zimmer, 258 Mich. 336, 337, 241 N. W. 851. Gross negligence is such negligence as is characterized by wantonness or willfulness."

Its remark on the same point in Thayer v. Thayer, 286 Mich. 273, 282 N. W. 145, was that:

"We have recently unanimously held in Pawlicki v. Faulkerson, 285 Mich. 141, 280 N. W. 141, that the term 'gross negligence' as used in the Guest statute, supra, is synonymous with wilful and wanton misconduct."

The State of South Dakota appears also to have borrowed the guest law proviso aforesaid from the statutes of the State of Michigan with very little change. See Chapter 147 Laws of South Dakota 1933. At that time the proviso had received such construction at the hands of the Michigan Supreme Court that in Melby v. Anderson, 64 S. D. 249, 266 N. W. 135, the South Dakota court could say, as it did:

"Conceding that the prior Michigan interpretation of the statute is not binding upon us 'unless we feel that such construction is sound and based upon reason' (State v. Nelson (1931) 58 S. D. 562, 237 N. W. 766, 768, 76 A. L. R. 1226), it is nevertheless the general presumption that the South Dakota Legislature intended to enact a law with the meaning that the courts of Michigan had previously placed upon the Michigan statute which our Legislature adopted. * * * * * * However, in view of the fact that the Legislature has seen

fit to adopt the Michigan statute, we accept it as such, and with it the construction that had theretofore been placed upon the statute by the Michigan court."

In Martins v. Kueter, 65 S. D. 384, 274 N. W. 497, by an unanimous court, it was held that evidence of attempting to follow a curve in the highway at a speed of seventy miles per hour, with which curve the defendant was familiar, plus an element of an affirmatively reckless state of mind, the defendant telling his guest passengers that he was taking them for a "thrill ride," authorized a jury to find that his conduct in this respect, resulting in injuries to a guest passenger, transcended mere negligence and approached deliberate misconduct "which defendant must have realized would in all probability result in disaster"; there was evidence also that defendant's conduct in the operation of the car was over the protest of the plaintiff and other occupants of the vehicle. However, in the subsequent case of Granflaten v. Rohde, (S. D.) 283 N. W. 153, it developed that plaintiff, a guest in the defendant's auto, suffered injuries when the defendant attempted, over protest from his passengers, to pass a car while approaching a hilltop in the night and failed to see an oncoming car until too late to avoid a collision. Although the road traffic was heavy the defendant had been driving sixty-five to seventy miles per hour and had been passing cars both on the level and hilly stretches of the highway. A verdict and judgment for the plaintiff was reversed, two justices dissenting, and it was held that under the guest statute measure of proof, gauged by the Michigan rule, the evidence was insufficient to go to the jury. In 37 Michigan Law Review 1128, after reviewing this and sundry other cases under the "Guest Acts," so called, of a number of states, the conclusion is proffered that in the case last above reviewed the court "adopted an overly strict view of the statutory requirement." However, in the course of the opinion in that case this was said:

"A mere error of judgment as to the result of doing an act or the omission of an act, having no evil purpose or intent or consciousness of probable injury, may constitute negligence. Where a driver intentionally does something in the operation of his car which he should not have done or there is an intentional failure to do something which he should have done under circumstances disclosing a conscious realization that injury is a probable (as distinguished from a possible) result of such conduct, the act ceases to be merely negligent and becomes wilful and wanton."

That there have been difficulties in administering the Michigan rule is attested by a divided court in LeGroh v. Bennett, 271 Mich. 526, 261 N. W. 81; Holmes v. Wesler, 274 Mich. 655, 265 N. W. 492; Elowitz v. Miller, 265 Mich. 551, 251 N. W. 548; Lucas v. Lindner et al., 276 Mich. 704, 269 N. W. 611; Riley v. Walters, 277 Mich. 620, 270 N. W. 160; Breckenridge v. Arms, 279 Mich. 384, 272 N. W. 716; Godley v. Mueller's Estate, 280 Mich. 203, 273 N. W. 448; Olszewski v. Dibrizio, 281 Mich. 423, 275 N. W. 194. And we find that in Rowe v. Vander Kolk, 278 Mich. 564, 270 N. W. 788, the Michigan court has said concerning cases arising under the so-called "Guest Act" that "the factual aspect of each case is of necessity the determining factor."

In this State, as is clear from the detailed legislative history of Sec. 72-701, supra, we cannot say that there should be invoked herein the familiar canon of statutory construction that a statute borrowed from the laws of another state will be assumed to have been taken by the borrowing jurisdiction with the construction placed upon it by the court of last resort in the state from which it was taken, for, as was said by the Supreme Court of Oklahoma in Smith v. Baker, 5 Okla. 326, 49 P. 61:

"The doctrine itself is but founded upon a presumption; that is, that, where one state or sovereignty adopts a statute of another state or sovereignty which

has already received a known and definite construction in its courts, it is presumed to adopt the construction thus given. Balance v. Rankin, 54 Am. Dec. 412. The essential element upon which the presumption is based is that it has already received a known and definite construction. The construction must have been fixed and uniform, and must have been so long established as to have been known, or so that it reasonably might have been known, to the legislature adopting it. Hunter v. Truckee Lodge, 14 Nev. 38."

In the Nevada case cited in the excerpt last above quoted, the court used this language:

"The rule is invoked that when a statute of another state has received a construction before its adoption here, it is taken to have been adopted as construed. We think, however, the rule, even if it had been more strictly adhered to in this state, would scarcely be applicable in this instance; for the case in question, although decided, was not reported before the passage of our law, and it can not be presumed that the legislature was aware of the decision."

This court is accordingly in the situation delineated in Wyoming Coal Mining Company v. State ex rel Kennedy, 15 Wyo. 97, 106, 87 P. 337, 984 on petition for rehearing, where, discussing a decision of the Supreme Court of Ohio dealing with certain sections of our Civil Code previously borrowed from the statutes of that state this was said:

"That case was decided long subsequent to the adoption of the provisions of the Ohio Code of Civil Procedure by this state, and while such adoption ordinarily bound the courts of this state to the construction which had been theretofore placed upon the provisions of the code by the Supreme Court of that state, yet the courts of Wyoming are not so bound by subsequent construction, which construction may be persuasive, though not conclusive."

We have never had occasion to construe the provisions of Section 72-701 W. R. S., 1931, which is generally referred to as the "Automobile Guest Act." In Flint v. Voiles, 50 Wyo. 43, 58 P. 2d 443, that section

was quoted and a Michigan decision cited, Gifford v. Dice, 269 Mich. 293, 257 N. W. 830, 96 A. L. R. 1477, and briefly reviewed, but as was expressly said in the course of the opinion in that case, we did not find it necessary to pass upon questions involving the quoted act. The case of Huffman v. Buckingham Transportation Co. of Colorado, 98 Fed. (2d) 916, has been called to our attention by both parties herein. There the operation of said Section 72-701 was apparently considered as in large measure controlled by the conclusion reached in the Naudzius v. Lahr and subsequent Michigan decisions, supra, the Circuit Court of Appeals for the Tenth Circuit saying:

"In Naudzius v. Lahr, 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189, decided on Jan. 23, 1931, prior to the borrowing and adopting of the statute by Wyoming, its constitutional validity was sustained, same construction announced as afterwards re-announced in Oxenger v. Ward, supra (256 Mich. 499, 240 N. W. 55), and later in Grabowski v. Seyler, 261 Mich. 473, 246 N. W. 189."

In Montana where degrees of negligence would seem to be recognized and where the Automobile Guest Statute (Chapter 195 Laws of Montana 1931) excuses a host from liability to a guest "unless damage or injury is caused directly and proximately by the grossly negligent and reckless operation by him of such motor vehicle," referring to the previous case of Nangle v. Northern Pacific Railway Co., 96 Mont. 512, 32 P. (2d) 11, in Baatz v. Noble, 105 Mont. 59, 69 P. (2d) 579, the court took this position:

"Defendant in support of his contention has invited our attention to a number of decisions from the courts of Iowa, Michigan, and elsewhere construing gross negligence statutes to mean willful and wanton misconduct. We carefully considered the decisions from these jurisdictions adhering to this rule, in our deliberation on the Nangle Case, and specifically referred to several of them in our opinion. We there declined to

follow decisions which thus construed statutes similar to our own, and likewise declined to follow decisions from courts refusing to recognize the existence of degrees of negligence. We are not disposed to depart from our views on this subject expressed in the Nangle Case."

Where the law provided that a guest should not recover from his host for injuries inflicted in a motor vehicle accident "unless such vehicle was willfully and wantonly operated in disregard of the rights of others" (Section 1302 Pope's Digest) in Froman v. J. R. Kelley Stave & Heading Co., 196 Ark. 808, 120 S. W. (2d) 164, the court quoting from Malcom on Automobile Guest Law, an excerpt made by that author from the decision in Sorrell v. White, 103 Vt. 277, 153 A. 359, says:

" 'Herein, we think, lies the distinction between gross and willful negligence as intended by the statute. Gross negligence falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. * * * * Willful negligence involves the element of conduct equivalent to a so-called constructive intent.' "

In Shaw, Admr. v. Moore, 104 Vt. 529, 162 A. 373, 87 A. L. R. 1139, where the Automobile Guest Law provided that no liability should attach to a host in favor of a guest for injuries incurred in the operation of a vehicle "unless such injuries are caused by the gross or willful negligence of the operator," the court said:

"The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful

and intentional conduct which is or ought to be known to have a tendency to injure."

In Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 506, 4 A. L. R. 1185, a bailment case, Chief Justice Rugg, speaking for the Supreme Judicial Court of Massachusetts, although indicating the impossibility of defining "gross negligence" with "the exactness of a mathematical demonstration," said:

"Gross negligence is a manifestly smaller amount of watchfulnes sand circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the wilful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter, even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, known to have a tendency to injure. This definition does not possess the exactness of a mathematical demonstration, but it is what the law now affords."

The learned jurist then pointed out that this definition was the result of the course of decisions in that commonwealth and that it was "supported by the great weight of authority in other jurisdictions." This definition, says the Supreme Court of Vermont, in Shaw, Admr. v. Moore, supra, supplies "a meaning of sufficient distinctness to be applied usefully by courts and juries to particular facts before them." This definition was accordingly applied by the Massachusetts court in the subsequent case of Beaton v. Dawson, (Mass.) 21 N. E. (2d) 965, a motor vehicle accident case involving injuries to a guest as a result of operating the vehicle by his host.

The text of 4 Blashfield Cyclopedia of Automobile Law and Practice (Permanent Edition) Section 2322,

page 107, discussing gross negligence, states the rule to be that: "It may consist of the breach of some statutory duty; but the driver's mere error in judgment, momentary inattention, or loss of presence of mind, does not make out gross negligence." This view of the law is supported by the late case of Kelley v. Anthony, (Vt.) 8 A. (2d) 641, citing the earlier case from that jurisdiction of Anderson v. Olson, 106 Vt. 70, 169 A. 781. To the same effect are the cases of Hamilton v. Perry, 109 S. W. (2d) 1142, 1143, (Tex. Civ. App.); Hansen v. Dall, 220 Iowa 817, 263 N. W. 530; Wright v. Swain, 168 Va. 315, 191 S. E. 611.

The text last above cited, at pages 110-111 of said Section 2322 also says that:

"Willful misconduct is the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct. It differs from negligence, even gross negligence, although it may include gross negligence, and involves a distinct positive element as distinguished from the merely negative element of negligence or carelessness. It is willfully designed to accomplish a specific result, and is not aimless of purpose or regardless of results."

Discussing the Nebraska Automobile Guest Statute (Section 39-1129, Comp. St. Supp. 1935) the Supreme Court of that State, in Johnk v. Scanlon, 136 Neb. 187, 285 N. W. 488, 489, declared:

"The existence of gross negligence must be determined from the facts and circumstances of each case. Ordinarily, the question of negligence, whether slight or gross, is one of fact, and in case of conflict the verdict of the jury is controlling. But there must be evidence of gross negligence sufficient to sustain a verdict."

See also Gilbert v. Bryant, 125 Neb. 731, 251 N. W.

823; Beaton v. Dawson, supra; Kelley v. Anthony, supra.

It is clear from the foregoing review of authorities that while in this jurisdiction the doctrine of degrees of negligence has so far as we know not been accepted —as is the general trend of modern authority (20 R. C. L. Page 21, Sec. 17, and cases cited in Note 8; The Steamboat New World v. King, 16 How. 474, 14 L. Ed. 1021—still where that doctrine is apparently made the basis of a legislative rule enforceable in the courts of the state, it seems to us it cannot be treated as without meaning or denied such application as can practically be administered. There is no difference in principle that we can see whether the rule is statutory or one of substantive common law as settled by the courts of the jurisdiction affected. Obviously the statutory rule we have to consider here was meant to relieve the owner or operator of a motor car from the consequence of accidents as regards guests invited by and traveling with him as a matter of courtesy or convenience, occasioned by the failure of such owner or operator to use ordinary care in the manipulation of the vehicle. To hold that evidence of want of ordinary care only would support a finding by a jury of gross negligence would, of course, be to abrogate the legislative rule.

The obvious query suggests itself that as the terms "gross negligence" and "wilful and wanton misconduct" both appear in the statute in the disjunctive— why the legislative body should have used both phrases if the first one was intended to mean the same as the last. It is a familiar rule, also, that courts should use every endeavor in construing statutes to give effect to a statute as an entirety and to every part thereof if that can be done. 59 C. J. 995, Section 595, and cases cited in Note 45.

So far as the language of the statute adopted by our Legislature, "wilful and wanton misconduct" is concerned, there cannot be any great difficulty in determining its meaning with reasonable precision, as stated by Blashfield, supra. The real difficulty arises when the language "gross negligence" is invoked. The definition given by Chief Justice Rugg and quoted above is doubtless as accurate as can be supplied. In our opinion, also, as indicated by the authorities hereinabove reviewed, each case must to a large extent be ruled by its own circumstances as found by the trier or triers of fact, this being especially so touching the question of gross negligence and where substantial conflicts in evidence are presented.

As we have already observed in the case at bar, the court found generally for the defendant. There is nothing in the record before us which would indicate any "willful and wanton misconduct" on the part of Walters nor his operation of his motor vehicle, as viewed in the light of the decisions and principles hereinabove considered. So far as the term "gross negligence" is concerned, we are unable to say, either, as a matter of law—which we must do in order to disturb this judgment—that Walters was guilty of that. There was, as demonstrated in Case No. 2137, sufficient width of roadway for the motor vehicles of Walters and Thornber to have passed despite the presence of a third car with the foreign license. Momentary misjudgment on Walters' part would not be sufficient to remove the statutory protection from him. Also there was evidence from which the district court could find that if Thornber had had his car under proper control and had turned to the right even an appreciable degree, the accident would not have occurred. Mitchell, the guest, did not see the Thornber car at all—even up to the moment when he was stricken unconscious by the impact of the collision. Walters, the host, did not see

334

it until thirty feet distant, when it was too late for him to do anything to avert the accident. Undoubtedly it was negligence for him not to have seen the Thornber car approaching previous to that crucial moment, but we think that the district court properly, under the facts presented, and the conflict in the evidence in regard to car speeds disclosed herein, was authorized to determine that this failure was not "gross negligence" within the definition of that language as approved and applied by the New England courts hereinabove cited.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.