*In re* MUELLER'S ESTATE.

GODLEY *v.* MUELLER.

1. Automobiles—Speed—Curves—Wilful and Wanton Misconduct.

Motorist who was familiar with 3-lane highway on which he was driving after 11 p. m. at speed of 90 to 100 miles an hour *held,* as a matter of law, not guilty of wilful and wanton misconduct in action by administratrix of deceased guest passenger for fatal injuries sustained when car, in negotiating a gradual curve and after traveling 700 feet from end of curve, left right-hand side of pavement for reasons unknown, traveled 100 feet to an embankment and another 87 feet before it came to rest (1 Comp. Laws 1929, § 4648).

2. PLEADING—DECLARATION WITH FATAL DEFECT.

    If declaration fails to set out a substantial cause of action, and is incapable of being made good by amendment, objection thereto may be taken at any stage of the proceedings.

3. SAME—WAIVER OF DEFENSES—AUTOMOBILES—WILFUL AND WANTON MISCONDUCT.

    In action by administratrix of estate of decedent guest passenger against estate of deceased host, defense that host was not guilty of wilful and wanton misconduct within meaning of act permitting guest passenger to recover only if host were guilty of such conduct *held*, not waived by failure so to plead in probate court (1 Comp. Laws 1929, § 4648).

    BUTZEL, J., dissenting.

Appeal from St. Clair; George (Fred W.), J. Submitted January 14, 1937. (Docket No. 61, Calendar No. 39,299.) Decided May 21, 1937.

In the matter of the estate of Bernhardt F. Mueller, deceased. Erma M. Godley, special administratrix of the estate of Gordon F. Godley, deceased, presented her claim for damages for the death of intestate as a result of injuries suffered in an automobile accident. From denial of claim, plaintiff appealed to circuit court. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Pepper & Inman,* for plaintiff.

*Walsh, Walsh & O'Sullivan,* for defendant.

SHARPE, J. This is an action brought by Erma M. Godley, administratrix of the estate of Gordon F. Godley, against the estate of Bernhardt F. Mueller for the negligent killing of Godley who was a guest passenger in a car driven by Mueller.

May 17, 1935, Mueller, Godley and others attended a banquet at the Black River Country Club located about one mile beyond the city limits of the city of Port Huron. During the afternoon Mueller played golf and at the banquet made an address. After the banquet he played cards and at about 11 p. m. invited Elgin Parker, Gordon Godley and Albert Hoffmeier to go for a ride in Mueller's Chrysler Airflow car. Mueller drove the car, Parker sat in the front seat on the right side, Godley was in the rear seat on the left side and Hoffmeier was on the right side of the rear seat. The party proceeded to what is called Bunce Creek at the south end of Port Huron. Mueller drove the car southwesterly on the Gratiot Turnpike, also known as U. S. highway No. 25. This highway is a three-lane concrete highway, each lane being 10 feet wide, with a curvature of 2 degrees, 30 minutes, the deflection of the curve from a straight line being 2.18 feet in the distance of 100 feet. While the parties were driving on this highway, there was no conversation except a discussion between Mueller and Parker as to the manner in which the radio in the car was operating. Just before the accident, Mueller was driving the car at a rate of speed varying between 90 and 100 miles per hour. The car traveled about 700 feet from the north end of the curve when it suddenly swerved to the right and went into a ditch on the right-hand side of the road. The car hit the embankment on the edge of the right of way at a point 100 feet from where it left the concrete and then traveled about 87 feet before coming to rest. As a result of this accident, Godley was instantly killed, Mueller was seriously injured and died a few days thereafter. Parker and Hoffmeier were both injured but survived.

After the death of Mueller, the administratrix of the Gordon F. Godley estate filed a claim in the probate court against the estate of Bernhardt F. Mueller. The claim was in the nature of a declaration divided into two counts, one count being a claim under the death act (3 Comp. Laws 1929, § 14061) and the other under the survival act (3 Comp. Laws 1929, § 14040). The claim was denied because of insufficient evidence. The cause was appealed to the circuit court and during the trial plaintiff elected to proceed under the death act. Defendant's counsel then moved the court for judgment for the reason that under the death act, any action for the wrongful death of Godley did not survive the death of Mueller. At the conclusion of plaintiff's proofs and again at the conclusion of all proofs, defendant moved for a directed verdict on the ground that plaintiff's decedent was a guest passenger and that plaintiff had failed to establish wilful and wanton misconduct on the part of Mueller; and that plaintiff's cause of action had abated upon the death of Mueller. The trial court reserved decision on the motion under the Empson act (3 Comp. Laws 1929, § 14531), and submitted the case to the jury which rendered a verdict for plaintiff. Defendant's motion for judgment notwithstanding the verdict was denied. Defendant appeals.

Plaintiff contends that the facts show that Mueller was guilty of wilful and wanton misconduct in the operation of his automobile prior to and at the time of the accident; that plaintiff's cause of action did not abate upon the death of Mueller; and that defendant not having raised the question of abatement in the answer to the declaration filed in the probate court has waived the same.

The first question for determination is whether or not Bernhardt F. Mueller was guilty of wilful

and wanton misconduct.  The evidence shows that the accident happened on a gradual curve on a highway.  The curve was uniform and Mueller had traversed more than 700 feet of it, traveling at a rate of speed estimated at between 90 and 100 miles per hour, when the car for reasons unknown left the highway on the right-hand side of the road, hit the embankment at a point approximately 100 feet from where it left the concrete, and came to rest 87 feet from where it hit the embankment.  The record also shows that none of the occupants of the car at any time made any protest as to the manner in which or the speed at which the car was being driven.  We also find that Mueller was familiar with this highway and had driven over it frequently for some years since it had been built.

In *Turney* v. *Meyer,* 266 Mich. 87, the defendant was driving down a hill approaching a curve at a speed of 60 miles per hour against the protest of his guest passengers.  In attempting to make the curve at the bottom of the hill, the car skidded, turned over and injured the plaintiff.  We held that this case was governed by *Elowitz* v. *Miller,* 265 Mich. 551, where we held that the failure of an automobile driver to see a curve in time to have slowed down to make the turn safely did not constitute wilful and wanton misconduct.

In *LeGroh* v. *Bennett,* 271 Mich. 526, the defendant was driving his car at 50 to 60 miles per hour on a slippery road in a heavy fog, when it was dark and rainy; and when objects were discernible only a few feet away.  Defendant in attempting to pass a car ahead of him, swerved to the left, hit a trailer on the left-hand side of the road, and injured plaintiff, a guest passenger in defendant's car.  We held that this case was governed by *Wyma* v. *Van Anrooy,* 260 Mich. 295, where we said, "It is not enough,

under the guest act, that defendant was careless, and, by the exercise of forethought, could have stopped his car, or, by more careful operation, have avoided the second collision.''

In *Fink* v. *Dasier*, 273 Mich. 416, the defendant, between 1 and 2 o'clock in the morning was driving his car 70 miles per hour over the protest of his passenger. He failed to see a car ahead of him in time to pass. We there said:

"It must also be held as a matter of law that at most it was only ordinary negligence for defendant, who was very familiar with this highway, to drive his automobile at the rate of 70 miles per hour under the circumstances surrounding him as he approached the point of accident and before he was aware of the presence of the other car preceding him down the hill.''

In *Holmes* v. *Wesler*, 274 Mich. 655, defendant, while driving a car between 70 and 75 miles per hour approached a curve, went off the pavement into the gravel, came back on the pavement, began to swerve and collided with a telephone pole on the left-hand side of the road. The court said:

"It is not claimed, nor is there any testimony tending to show, that defendant intentionally drove too near to and off the right-hand side of the paved portion of the highway. It may be conceded that defendant was driving his car carelessly and that this regrettable accident would not have occurred had defendant not carelessly driven his automobile off the right-hand side of the pavement; but in doing so he was guilty only of ordinary negligence, not of gross negligence, or wilful or wanton misconduct. When the car was returned to the paved portion of the highway, it was wholly out of defendant's control, and the accident was then unavoidable. It was caused by ordinary negligence, nothing more.''

In *Keilitz* v. *Elley* (syllabus), 276 Mich. 701,

"Driver of automobile *held,* not guilty of wilful and wanton misconduct allowing recovery for death under guest passenger act where in spite of warning by decedent's brother to slow down, defendant drove at excessive speed of 62 miles an hour at 2 a. m. on gravel road with which he was not very familiar and car went over embankment at unmarked curve after crossing railroad track."

In *Riley* v. *Walters,* 277 Mich. 620, defendant approached a curve at a rate of speed between 65 and 70 miles per hour. We there held (syllabus) :

"Negligence of automobile driver in making turn on dry road bed in warm weather at high speed notwithstanding conversation of plaintiff guest passenger and another with defendant indicating the former's desire for slower speed *held,* not wilful or wanton misconduct entitling plaintiff to recovery under guest passenger act."

In this cause one Elgin Parker, a witness produced by the plaintiff, testified as follows:

"I didn't notice any difference between his driving the night in question and any other time I had ridden with him. I have told you all that I noticed of the driving that night down to the place of the accident, as far as I can remember, and I didn't notice anything that would be alarming until the time of the accident. I didn't notice any more than the natural swerve of any car driving along the highway before the time of the final swerve which ended in the accident. * * *

"Throughout the ride, up to the point where I noticed the speed of the car, I hadn't noticed anything unusual about Mr. Mueller's driving. Nothing called my attention to the speedometer other than the time when I looked just before the accident."

In this cause the record shows that when the car left the concrete highway, it did so on its four wheels and that when it ended up its tires were still intact.  There is no positive evidence that the speed of the car was the cause of its going off the road, and we are constrained to hold that Mueller was not guilty of gross negligence and wilful and wanton misconduct within the meaning of the so-called guest passenger law (1 Comp. Laws 1929, § 4648).

Plaintiff next contends that it was the duty of defendant to plead affirmatively in the probate court and that his failure so to plead constitutes a waiver of the defense that Mueller was not guilty of wilful and wanton misconduct.

In *Bauman* v. *Bean,* 57 Mich. 1, we said:

"If a declaration fails altogether to set out a substantial cause of action, and is incapable of being made good by amendment, the objection may be taken at any stage of the proceedings.

Judgment is reversed, without a new trial.  Defendant may recover costs.

Fead, C. J., and North, Wiest, Potter and Chandler, JJ., concurred with Sharpe, J.


Butzel, J. (*dissenting*).  A jury question was presented.  As appellant asked for a directed verdict and a judgment *non obstante veredicto,* the testimony must be considered in the light most favorable to appellee.  It shows that just before the accident, one passenger looked at the speedometer and told defendant's decedent that the car was going 100 miles an hour, while another passenger stated it was only traveling 95 miles per hour.  Defendant's decedent thereupon stated that the car was only capable of 90 miles an hour.  Notwithstanding

the latter opinion, the car may have been driven under extreme strain. After the accident, the hand on the speedometer, which had stopped, pointed at 92 miles an hour, but this again is not conclusive. There is no evidence whatsoever in the case that the car was going at a rate as low as 85 miles an hour as appears in appellant's statement of questions involved. The record shows that at the time of the accident, the driver was negotiating a slight curve in the road, but that it had been continuous for a distance of over 600 feet to the point where the car went off the road. There is some proof that he had a few drinks before leaving his club and that the hour was close towards midnight.

We have consistently held that excessive speed alone does not constitute wilful and wanton misconduct, but the circumstances in each case must be considered. It is true that today cars are frequently driven at the rate of from 75 to 80 miles an hour and ordinarily, unless there are special circumstances, such rate would not be so excessive as to constitute wilful and wanton misconduct. We do hold, however, that when at nighttime, around a slightly curved road, a driver drives his car at a rate varying from 95 to 100 miles an hour, a speed which may be termed "racetrack speed" such as is commonly used on speedways, and an accident occurs, it at least becomes a question for the jury to determine whether there was not such a degree of recklessness as to constitute wilful and wanton misconduct. The judge properly left the question to the jury.

Appellant further claims that an action for wrongful death under Act No. 38, Pub. Acts 1848 (3 Comp. Laws 1929, § 14061), abated upon the death of the tortfeasor. The precise question has

never been presented to this court. In *Re Sullivan's Estate,* 165 Mich. 585, it was apparently assumed that the estate of a deceased tortfeasor was liable for a claim involving personal injury.

Section 14061, 3 Comp. Laws 1929, provides as follows:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

The question arises: Who is the person who would have been liable under the wording of this statute had plaintiff's decedent not died? We are not unmindful of the difficulties that have arisen in other jurisdictions relative to the question of whether an action abates upon the death of the tortfeasor.

The various wrongful death acts commencing with Lord Campbell's Act in 1846 (9 and 10 Victoria, chap. 93) were enacted to cover this class of personal injury cases not recognized by the common law. The wrongful death act, 3 Comp. Laws 1929, § 14061, makes the "person who * * * would have been liable, if death had not ensued, liable to an action for damages." Under our probate practice, 3 Comp. Laws 1929, § 15685:

"The commissioners shall have power to try and decide upon all claims which by law survive against or in favor of executors and administrators."

It seems wholly illogical and not in accordance with any theory of common sense to believe that the legislature intended to confine the word "person," as used in the wrongful death act, to the tortfeasor himself and exclude the estate of a deceased tortfeasor. The statute did not use the word "tortfeasor." While statutes in derogation of the common law should be strictly construed, they must nevertheless be reasonably construed. We believe the word "person" was intended to include both the tortfeasor and his estate. Some States have deemed it necessary to define the word "person" by express statutory enactment so as to include such person's estate.

In *Harris* v. *Nashville Trust Co.,* 128 Tenn. 573, 581, 582 (162 S. W. 584, 49 L. R. A. [N. S.] 897, Ann. Cas. 1914 C, 885), the court said:

"The maxim, '*actio personalis moritur cum persona*,' is by no means a favorite with the courts. It has no champion at this date, nor has any judge or law writer risen to defend it for two hundred years past. * * * It is sufficient to say that no reason has ever been assigned for the existence of this rule which would satisfy an enlightened court of modern times."

In 1931, the Supreme Court of Nebraska, in *Re Grainger's Estate,* 121 Neb. 338 (237 N. W. 153, 78 A. L. R. 597), held that when a defendant tortfeasor died, his estate was liable notwithstanding the common law maxim mentioned above.

While it is true that the wrongful death act is distinct from the survival statute, on the score of the amount of damages recoverable and the question of instantaneousness of death, the former nevertheless should be read in conjunction with the latter. The same question arose in *Devine* v. *Healy,* 241

Ill. 34 (89 N. E. 251, 61 A. L. R. 837), where it was held that the wrongful death act must be construed in the light of the survival statute and the conclusion was there reached that the legal representative of the deceased wrongdoer is within the language of the wrongful death act referred to, as the "person who * * * would have been liable, if death had not ensued."

It will be found in section 14040, that there is no reference whatsoever to the liability of the estate in the event of the tortfeasor's death, yet in *Ford* v. *Maney's Estate*, 251 Mich. 461, 464 (70 A. L. R. 1315), we held as follows:

"A cause of action for negligent injuries, which accrues in the lifetime of a party, whether person injured or tortfeasor, survives his death. *Rogers* v. *Windoes*, 48 Mich. 628; *Norris* v. *Kent Circuit Judge*, 100 Mich. 256; *Love* v. *Railroad Co.*, 170 Mich. 1.

" 'When the law declares that a cause of action shall survive, it is equivalent to saying an executor may sue upon it.' *Rogers* v. *Windoes, supra.*

"It is also equivalent to saying that the estate of the deceased tortfeasor may be sued upon it."

*Ford* v. *Maney's Estate, supra,* is clear authority for the holding that the tortfeasor's estate would have been liable to plaintiff's decedent, had death not ensued, and, as such, would be a "person" liable to an action for damages under the wrongful death act.

While we are fully cognizant of the rulings of other States absolving a tortfeasor from liability in the event of his death in the absence of statutory provisions making the estate liable, under the wording of our statute and for the reasons above stated,

we find that the liability extends to the estate of the tortfeasor.

The judgment of the lower court should be affirmed, with costs to appellee.

BUSHNELL, J., did not sit.