ACKRON CONTRACTING COMPANY v OAKLAND COUNTY

Docket No. 50058. Submitted April 20, 1981, at Detroit.—Decided August 19, 1981.

Ackron Contracting Company brought an action against Oakland County, alleging breach of contract. The county moved to add Argonaut Insurance Company, surety for Ackron, as a party defendant, which motion was granted. The county also filed a counterclaim against Ackron for breach of contract and against Argonaut to recover damages resulting from Ackron's breach. The county subsequently moved to dismiss Ackron's claim and for default judgment against Argonaut. Oakland Circuit Court, Farrell E. Roberts, J., granted the county judgment against Argonaut as to liability. Argonaut appealed to the Court of Appeals, which affirmed the entry of judgment, 87 Mich App 294 (1978). Hearings as to the amount of damages subsequently were held and damages were determined. Argonaut appeals, alleging that the scope of the damage hearing was inconsistent with the requirements for such a hearing pursuant to the applicable court rule. *Held:*

1. The extent of Ackron's liability, if any, to the county has not been determined as yet. Until that determination is made, Argonaut should not be required to compensate the county for costs incurred as a result of Ackron's alleged breach.

2. The case is remanded to the circuit court for immediate trial between Ackron and the county. Once the issue of liability is determined, new and separate hearings as to the amount of damages, if any, shall be held at which Argonaut shall be allowed to participate.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Judgments § 1173.
[2, 6] 74 Am Jur 2d, Suretyship §§ 24-26.
[3] 47 Am Jur 2d, Judgments § 1206.
[4] 47 Am Jur 2d, Judgments § 1192.
[5] 24 Am Jur 2d, Dismissal, Discontinuance and Nonsuit §§ 41, 42.
Propriety of dismissal under Federal Civil Procedure Rule 41(a) of action against less than all of several defendants. 3 ALR Fed 569.

1. JUDGMENTS — DEFAULT JUDGMENTS — COURT RULES.

    A trial court, prior to entry of judgment upon the default of a party or to enable it to effectuate a default judgment, may conduct such hearings or order such references as it deems necessary and accord a trial by jury to the parties to determine the amount of damages, to establish the truth of any averment, or to investigate any other matter (GCR 1963, 520.2[2]).

2. SURETYSHIP AND GUARANTEE — LIABILITY OF SURETIES — DEFENSES — ACTIONS.

    The extent of liability of a surety is coextensive with that of its principal; the surety may plead any defense available to its principal, and where no action can be maintained by an obligee against the principal, none can be maintained against the surety.

3. JUDGMENTS — DEFAULT JUDGMENTS — MULTIPLE DEFENDANTS.

    Entry of a default judgment should be postponed where the action involves multiple defendants and only some of the defendants are in default until all defendants are in default or the action is tried as to the defendant not in default.

4. JUDGMENTS — DEFAULT JUDGMENTS — MULTIPLE DEFENDANTS — DAMAGES.

    A defendant, in an action involving multiple defendants, who defaults loses his standing to answer or otherwise defend as to his liability; however, the question of damages as to the defaulting defendant properly may be determined during the trial of the answering defendants, and the defaulting defendant is entitled to participate in such determination without further pleading.

5. ACTIONS — DISMISSAL — DEFAULT.

    The dismissal of an action against multiple defendants on the merits affects all defendants, including any defendants in default at the time of the dismissal.

6. SURETYSHIP AND GUARANTEE — LIABILITY OF SURETIES — DEFAULT — DAMAGES.

    A default judgment should not be entered against a surety for failure to comply with discovery orders until the liability of its principal has been determined; following such determination, a hearing relative to damages should be held at which the defaulted surety is entitled to participate.

*Dickinson, Wright, McKean, Cudlip & Moon* (by

*Charles F. Clippert, Erik J. Stone,* and *Michael B. W. Sinclair),* for Oakland County.

*Frank & Stefani* (by *Sidney L. Frank* and *Ellen M. Tallerico),* for Argonaut Insurance Company.

Before: N. J. Kaufman, P.J., and Allen and D. C. Riley, JJ.

Per Curiam. On April 18, 1972, Oakland County entered into two contracts with Ackron Contracting Company for the construction of portions of the Clinton-Oakland Sewage Disposal System. The contracts called for installation of sewer mains as well as for the restoration of areas disturbed as a result of construction. The drawings and specifications for the contracts were set out in two separate booklets specifically incorporated into the contract. At the same time, Argonaut Insurance Company, appellant herein, executed performance bonds as surety for Ackron's performance of the contracts.

Ackron commenced construction under the terms of the contract and substantially completed all underground structures, the sewers and their appurtenances before ceasing operations in June of 1974. At the time of abandonment, Oakland County had disbursed monthly progress payments in the amount of $1,265,714.29 for contract T-3 and $698,005.26 for contract T-6. The final contract prices which would have been due to Ackron, had it completed the work, were stated by Oakland County to be $1,348,255.49 for contract T-3 and $750,133.77 for contract T-6.[1]

---

[1] These figures were calculated by taking the actual quantities of the sewer system installed by Ackron (and other contractors hired to complete the project) and adding to that figure the reasonable costs of change orders and extras which the county felt obligated to pay. Less than the estimated quantities of sewer main were actually installed under each of the contracts, resulting in a downward adjustment from Ackron's original bid prices.

On February 26, 1976, Ackron filed a complaint against Oakland County, alleging that the county failed to pay certain amounts due Ackron for sodding in connection with the contracts, for additional work by Ackron that was not within the scope of the contracts, and for the balance due under the contracts. Oakland County's answer alleged that Ackron had failed to perform its obligations under the contracts and counterclaimed for an amount in excess of $300,000 to cover expenses incurred in completing the project. On July 19, 1976, Oakland County successfully moved to add Argonaut as a counter-defendant.

On September 14, 1977, Oakland County filed a motion to dismiss Ackron's complaint and for entry of a default judgment against Argonaut. On September 28, 1977, an order was entered, granting the county's motion for a default judgment against Argonaut for failure to comply with discovery orders. The entry of default was affirmed by this Court in *Ackron Contracting Co, Inc v Oakland County,* 87 Mich App 294; 274 NW2d 44 (1978), *lv den* 406 Mich 915 (1979).

Pursuant to GCR 1963, 520.2(2),[2] evidentiary hearings were held on May 23, July 26, and July 27, 1979, to determine the amount of damages recoverable against Argonaut for costs incurred in completing the project. Oakland County's project

---

[2] GCR 1963, 520.2(2) reads in pertinent part as follows:

".2 Judgment. Judgment by default may be entered as follows:

* * *

"(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor * * *. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by the constitution."

engineer was the only witness called. He testified concerning the scope of the contracts and the procedures for payment of individual contractors during completion. He stated that, although Ackron had substantially completed the construction of the sewer system, it had failed to complete surface restoration and had failed to make necessary repairs on the sewer system. As a result, the county was forced to hire other contractors to complete the project.

In an attempt to establish the cost of completion, detailed accounts and summaries of amounts paid to individual contractors were presented in evidence. Oakland County contended that it was entitled to recover $516,890.01 for amounts expended in completing the project, less $123,754.25, which it had retained.

Argonaut's trial counsel attempted to cross-examine the county's project engineer regarding certain amounts paid to the contractors to complete the project. It was Argonaut's theory that some of Oakland County's expenditures were either uncalled for by the contracts or were items which Ackron had not been directed to complete before it abandoned the project. Following a discussion held off the record, cross-examination was not permitted.[3]

---

[3] Although the trial court failed to make a ruling on the record, the remarks of Argonaut's counsel indicates the scope of the in-chambers discussion:

"Your Honor has indicated that he intends to interpret the default judgment of liability as a limitation on my right to inquire into anything that relates to the county's right to have performed certain portions of the work. I wanted to state on the record that it was my intention, through the cross-examination of [the county's project engineer], and the presentation of witnesses, Mr. Brown, Mr. Ackron, James Ackron and Mr. Harold Ackron, it was my intention to challenge the right of the county to charge for certain portions of the work represented by Exhibits 3 through 23 or 3 through 20.

"For example, it was my intention, and this is for example purposes only, to question the right of the county to charge for gravel restora-

On April 2, 1980, the trial judge entered an order awarding the county damages in the amount of $313,705.44. The principal action between Ackron and Oakland County has not as yet been heard. Argonaut brings this appeal as a matter of right, challenging the April 2, 1980, order.

Argonaut's first contention on appeal is that the court's restrictions on the scope of the damage hearing were inconsistent with the requirements of GCR 1963, 520.2(2) and Michigan case law and that the court's decision to preclude Argonaut from challenging Oakland County's claim for damages on the ground that certain costs were not within the terms of the contract constituted error requiring reversal.

The procedural history of this case compels us to decide this matter on a ground not raised by the parties. Argonaut, the defaulted party, is surety for Ackron Construction Company, and the extent of its liability is, therefore, coextensive with that of Ackron. 23 Mich Civil Jurisprudence, Suretyship, § 35, p 84. Generally, a surety may plead any defense available to its principal and if no action can be maintained by the obligee against the principal, none can be maintained against the surety. 23 Mich Civil Jurisprudence, Suretyship, § 47, p 100. Since the primary action between Ackron and Oakland County has not yet been tried, it is unclear what Ackron's ultimate liability will be.

tion, that being an item that it would be our position was not called for under the contract, or not an item which the contractor or the bonding company received notice to complete in the period May and June of 1974.

"With that statement of the—I'm sorry, there's one other area that we intended to go into. We intended to challenge the accuracy of the records which have been introduced, specifically to show that a great portion of that work does not relate, in any way whatsoever, to the punch list which was prepared and forwarded to Ackron Contracting Company and the bonding company."

Oakland County's counterclaim against counter-defendants Ackron and appellant Argonaut seeks recovery for damages caused by Ackron's alleged breach of contract. When the case between Oakland County and Ackron is ultimately resolved, however, it may be determined that Ackron did not breach the contracts and that Ackron has a right of recovery against Oakland County, as Ackron asserts in its complaint. In such a case, Argonaut, as Ackron's surety, should not be liable to Oakland County in any amount.

As the matter currently stands, Argonaut, as the defaulted party, stands in the anomalous position of having to admit its principal's liability for breach of the contracts and to compensate Oakland County for the costs which the county incurred in completing them before that issue has been ultimately determined in the principal action between Oakland County and Ackron.

The present issue before this Court, as we see it, was stated in 6 Moore's Federal Practice (2d ed), § 55.06, p 55-81:

"Where there are several defendants a question may arise as to whether, after entry of a default against one, a default judgment can be entered immediately against the defaulting defendant or whether entry must be postponed until all the defendants are in default or the case is tried as to the defendants not in default."

The authors of that treatise, citing the leading case of *Frow v De La Vega,* 82 US (15 Wall) 552, 554; 21 L Ed 60 (1872), state that the "latter alternative is the correct procedure where the liability of the defendants is joint". Moore's, *supra,* p 55-81.

The problem with the posture of the present

case was stated by Justice Bradley in *Frow, supra,* 554:

"If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

"The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court * * *. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all."

The problem of default judgments in actions involving several defendants is explored further in 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2690, pp 288 *et seq.,* where the authors make the following conclusion:

"The general rule developed in the *Frow* case applies when the liability is *joint and several* and probably can be extended to situations in which several defendants have closely related defenses. When that is the case, entry of judgment also should await an adjudication of the liability of the nondefaulting defendants." (Emphasis added.) *Id.,* 290-291.

Following this procedure also promotes concepts of judicial economy, as stated in *Baker v Old National Bank of Providence, Rhode Island,* 91 F 449, 450 (CA 1, 1899):

"[A]s all the defendants are interested in the same underlying questions, there are serious objections to having a case of this kind come up by several successive appeals, on one of which different phases might be presented from those presented on another, leading to inconsistent results. The proper way is to hold the suit for one ultimate decree * * *."

The following appears in 47 Am Jur 2d, Judgments, § 1192, p 210:

"In an action against several defendants some of whom default, the question of damages as to the defaulting defendants may properly be tried and determined at the trial of the case of the answering defendants, and as a part thereof. In such a case, the defaulting defendants are entitled to participate in the trial on the question of damages, and no pleading on their part is necessary to enable them to do so. Another procedure sometimes followed is to proceed to trial on the issue of the liability of the remaining defendants before holding a hearing in damages as to the defaulted defendant." (Footnotes omitted.)

As a general rule, upon the entry of a default, the well-pled factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *Geddes v United Financial Group,* 559 F2d 557, 560 (CA 9, 1977), *Grinnell v Bebb,* 126 Mich 157, 159; 85 NW 467 (1901). Once the default is established, the defendant loses his standing to contest the factual allegations of the plaintiff's claim for relief. *Geddes, supra.*

Applying the aforementioned principles of law,

we are of the opinion that the question of damages between Argonaut and Oakland County best should be determined after the rights of Ackron and the county have been litigated. This procedure, we believe, will avoid the anomalous situation which may arise whereby Argonaut is required to compensate the county for costs incurred in completing the contracts allegedly breached by its principal only to have it later determined that Ackron did not breach the contract and has a right of recovery against Oakland County.

Accordingly, in the interests of judicial economy, we remand this matter to the circuit court for an immediate trial of the principal action between Ackron and Oakland County. GCR 1963, 820. As a defaulted party, of course, Argonaut has no right to participate in these proceedings and is precluded from denying the validity of its surety agreements with Ackron. Once the issue of liability has been determined, a new, separate hearing on damages shall be held at which counsel for Argonaut shall be allowed to participate in accordance with the dictates of the Supreme Court in *Grinnell, supra.* Since the issue of liability will have been resolved by that time, the line of demarcation between damages and liability should be clearer than it was at the hearing held below. The April 2, 1980, order against Argonaut is hereby set aside.

Reversed and remanded. We retain no further jurisdiction.

Costs to abide the final outcome.