*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STANDARD ELECTRIC COMPANY,

      Plaintiff-Appellant,

v

MARKEE ELECTRIC, INC., RICHARD MARKEE,
COOLIDGE PARK COMMERCIAL, LLC,
COOLIDGE PARK LIMITED DIVIDEND
HOUSING ASSOCIATION LIMITED
PARTNERSHIP, SIWEK CONSTRUCTION
COMPANY, and WESTERN SURETY
COMPANY,

      Defendants-Appellees.

UNPUBLISHED
December 22, 2022

No. 359028
Genesee Circuit Court
LC No. 20-114839-CB

Before: M.J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Plaintiff, Standard Electric Company (Standard Electric), appeals as of right the trial court's order granting summary disposition in favor of defendants, Markee Electric, Inc. (Markee Electric), Richard Markee, Coolidge Park Commercial, LLC (CP LLC), Coolidge Park Limited Dividend Housing Association Limited Partnership (CP Partnership), Siwek Construction Company (Siwek), and Western Surety Company (Western), and dismissing Standard Electric's claims against them.[1] Standard Electric additionally challenges the court's prior order setting aside a default judgment entered against Western. We affirm.

## I. BACKGROUND

This case arises from a contract for the development of a plot of real property. The initial contract was between the CP defendants, the developers, and Siwek, the general contractor. Siwek

---

[1] We refer to Markee Electric and Richard Markee collectively as "the Markee defendants." We refer to CP LLC and CP Partnership collectively as "the CP defendants."

subcontracted with the Markee defendants for supplies and labor for the project's electrical work, and the Markee defendants then contracted with Standard Electric for electrical supplies. Western was the surety, and Siwek was its principal. In this capacity, Western issued the performance and payment bonds on the development project.

This litigation arose from Standard Electric's allegation that the Markee defendants failed to pay any of the money that they owed to Standard Electric for electrical supplies Standard Electric provided related to the project. Standard Electric furnished electrical supplies to Markee, pursuant to a contract between Markee and Standard Electric. The last invoices between Standard Electric and Markee are dated July 5, 2019. On July 9, 2019, Siwek terminated Markee's subcontract because Markee went out of business. Pursuant to a different contract, Standard Electric continued to furnish electrical supplies to the subcontractor that replaced Markee on the project through October 2019.

Standard Electric sent a claim against the payment bond to Western on September 9, 2019, which, after review, Western denied on November 14, 2019. On November 15, 2019, Standard Electric filed a claim of lien on the project for the same amount stated in its claim against the payment bond, but stating it last provided materials on October 7, 2019.

Standard Electric filed a complaint alleging five counts, two of which are at issue here: (1) foreclosure of a construction lien, and (2) reliance on payment bond. Standard Electric subsequently filed an amended complaint in which it added Western as a defendant. Western failed to timely respond to the amended complaint, and the trial court, upon motions from Standard Electric, entered a default followed by a default judgment. Western promptly brought a motion to set aside the default, which the trial court granted over Standard Electric's objection. Western then successfully moved for summary disposition, arguing that Standard Electric failed to timely file its claim and that Western complied with the terms of the bonds. This appeal followed.[2]

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Summary disposition is appropriate under MCR 2.116(C)(7) if, among other possible reasons, the applicable limitations period expired before commencement of the action. *Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties,

---

[2] Western is the only defendant-appellee that has submitted arguments to this Court. The CP defendants and Siwek concurred with the arguments in Western's brief on appeal. The parties have indicated that the Markee Defendants are out of business.

accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (quotation marks and citation omitted).

"A trial court's decision regarding a motion to set aside a default judgment is reviewed for an abuse of discretion." *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 272; 803 NW2d 151 (2011). "An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015). This Court reviews "de novo the interpretation and application of a statute . . . ." *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003). "When construing a court rule, this Court employs the legal principles governing the application and construction of statutes." *Lawrence M Clarke, Inc*, 489 Mich at 272.

## III. SUMMARY DISPOSITION

## A. CONSTRUCTION LIEN ACT CLAIM

Standard Electric argues that the trial court erred by granting summary disposition because it misapplied the Construction Lien Act (CLA), MCL 570.1101 *et seq*. We disagree.

A construction lien is a security interest that a participant on a construction project takes in real property as security for their payment expectations. See MCL 570.1103; 570.1107(1). Construction liens are governed by the CLA. " 'Construction lien' means the lien of a contractor, subcontractor, supplier, or laborer, as described in [MCL 570.1107]." MCL 570.1103. MCL 570.1107(1) states in relevant part:

> Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, . . . the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. . . . [MCL 570.1107(1).]

Construction liens have two periods of limitations: a threshold period of limitations for recording the lien, and a period for filing suit to foreclose the lien. See MCL 570.1111(1) (providing a 90-day threshold period of limitations for recording a lien); MCL 570.1117(1) (providing a one-year period of limitations for filing suit to foreclose interest subject to the lien). The right to a construction lien "shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material" on the improvement, pursuant to the lien claimant's contract, the lien claimant records a claim of lien with the register of deeds in the county in which the property is located. MCL 570.1111(1). In general, "[p]roceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded." MCL 570.1117(1).

But if a surety properly files a payment bond with the lien claimant as an obligee, the lien may be vacated or discharged. See MCL 570.1116(1) ("The claim of lien of a contractor, subcontractor, supplier, or laborer may at any time be vacated and discharged if a bond, with the lien claimant as obligee, is filed with the county clerk for the county in which the property covered

by the lien is located . . . ."). A copy must also be given to the obligee lien claimant. See *id*. When a surety bond supplants a construction lien, "the six-year period of limitations for contract actions, MCL 600.5807(8), applies to" the claim instead of the one-year period of limitations for construction liens. *E R Zeiler Excavating, Inc v Valenti Trobec Chandler, Inc*, 270 Mich App 639, 645-646; 717 NW2d 370 (2006). Like any contract, the parties may agree to a shorter limitations period for filing suit. See *Rory v Continental Ins Co*, 473 Mich 457, 467-470; 703 NW23 (2005) (holding such unambiguous agreements are enforceable as long as they are not contrary to public policy).

Standard Electric raises two arguments related to the trial court's application of the CLA, and we limit the scope of our review to the specific questions raised. It first argues that the trial court erred by applying the incorrect period of limitations to find that its claim of lien was not timely. Standard Electric argues that the existence of the payment bond, which the trial court viewed as legitimate, rendered the CLA's period of limitations inapplicable. Critically, Standard Electric does not argue that the claim of lien was timely; rather, it argues that the timing of the claim of lien did not matter because the payment bonds were subject to the six-year limitations period for contracts. This argument, however, conflates Standard Electric's construction lien foreclosure claim with its payment bond claim. Regarding the payment bond claim, nothing in the record suggests that the trial court dismissed the claim on the basis of timeliness concerns. Instead, the court concluded that Western had properly performed under the terms of the bond. Regarding, the construction lien claim, the court correctly found that the existence of a payment bond extinguished any construction lien claim. The trial court correctly concluded that the payment bond did not extend the period of limitations for the construction lien; it supplanted the construction lien claim altogether. To the extent any construction lien claim continued to exist, Standard Electric failed to record its lien within the 90-day threshold period of limitations or bring suit to foreclose on the lien within one year.

This brings us to Standard Electric's second argument that the court erred, not just in its interpretation of the statute, but in applying it to the construction lien claim. Standard Electric misreads the applicable statutory scheme. To file a claim on a construction lien, a party must have a *right* to a construction lien. *Northern Concrete Pipe, Inc v Sinacola Companies-Midwest, Inc*, 461 Mich 316, 323; 603 NW2d 257 (1999); see MCL 570.1111(1). As stated, the right to a construction lien expires if the lien claimant fails to record a claim of lien with the register of deeds in the county in which the property is located within 90 days of the lien claimant last furnishing labor or material "pursuant to the lien claimant's contract." See MCL 570.1111(1); *Northern Concrete Pipe*, 461 Mich at 323. A party may not tack together separate contracts to extend the threshold period of limitations for filing a lien claim. See *RC Mahon Co v Ford Motor Co*, 256 Mich 255, 257; 239 NW 348 (1931) (applying Michigan's earlier mechanics lien law; holding that claimants could not tack two contracts for the same project together to enlarge the time for filing a lien, where claimants furnished labor and material on the same project under one contract with a general contractor, which was cancelled, and later, under a second contract with the owner and its architect).

Here, Standard Electric did not timely record the lien. The evidence presented showed that Standard Electric failed to record its claim of lien within 90 days of last furnishing materials to Markee. Initially, there appear to be several viable dates that could function as the last date

Standard Electric furnished materials.[3]  On closer review, the last possible date is July 9, 2019, the date Markee went out of business.  A construction lien only arises out of contractual obligations. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 561; 886 NW2d 113 (2016).  The triggering date, therefore, is not the last date a supplier furnished materials on a project; rather, the triggering date is the last date a supplier furnished materials on the contract giving rise to the construction lien.  See MCL 570.1111(1); see also *RC Mahon Co*, 256 Mich at 257.  Here, it is uncontested that the lien arose out of Standard Electric's contract with Markee.  It is also uncontested that Markee went out of business, and Siwek cancelled its contract on July 9, 2019.  Although Standard Electric eventually supplied Markee's replacement on the project, that contract did not give rise to Standard Electric's claim, and it cannot use performance on that contract to enlarge the start of the 90-day claim period.  See *id.*  Standard Electric could not have furnished supplies on its contract with Markee after July 9, 2019, meaning the 90-day period expired on October 7, 2019.  Standard Electric did not file its claim of lien until November 12, 2019, past the 90-day threshold period of limitations provided in MCL 570.1111(1).  To the extent Standard Electric's construction lien was not supplanted by the bond, Standard Electric's right to a construction lien had expired.  The question of whether the one-year or six-year limitations period applies is, therefore, irrelevant.

For these reasons, the trial court correctly granted summary disposition related to the action to foreclose the construction lien.

---

[3] For example, invoices attached to Western's dispositive motion have entries for transactions between Standard Electric and Markee from August 2018 through July 2019.   Several of the invoice entries, including the last two entries dated July 5, 2019, are marked as "MC," which, according to the legend on the invoice, means "Miscellaneous Credit."  It appears these entries indicate a return, as the amounts appear as "141.70-" and "453.68-."  There is also an entry dated July 1, 2019, marked as "SC," but the legend does not define "SC."

In its complaint, Standard Electric indicated that it provided materials to Markee Electric from August 1, 2018, through June 26, 2019.  Alternatively, a letter from Standard Electric to CP LLC (copying Siwek and Western), dated September 9, 2019, also indicated that Standard Electric furnished labor or material to Markee on July 26, 2019, though there is no other evidence of Standard Electric providing material or labor on July 26, 2019.  If we were to consider the last day on the invoices, July 5, 2019, Standard Electric would have had to file its claim of lien by October 3, 2019.  And if we were to consider the July 26, 2019 date in the letter from Standard Electric to CP LLC, Standard Electric would have had to file its claim of lien by October 24, 2019.  Standard Electric did not file its claim of lien until November 12, 2019.  So, whether we look to the early July 2019 dates in the invoices, or the July 26, 2019 date in the letter to CP LLC, Standard Electric's claim of lien was not filed within 90 days, as required by MCL 570.1111(1).

Finally, we acknowledge that Standard Electric's claim of lien was filed November 12, 2019, which indicated that it last provided materials on October 7, 2019.  Standard Electric also sent a letter to CP LLC (copying Western) on November 19, 2019, which had changed the date from October 7, 2019, to October 11, 2019.  It appears, however, that the materials or labor furnished on those dates was to the subcontractor that replaced Markee, an entity not a party to this litigation.

## B. PAYMENT BOND CLAIM

Standard Electric also argues that the trial court erred when it granted summary disposition of its payment bond claim. We disagree.

As stated, a payment bond may supplant a construction lien. See MCL 570.1116(1). When a surety posts a bond, the bond essentially replaces the real property as the security for subcontractors, suppliers, and others who might otherwise have a construction lien. *E R Zeiler*, 270 Mich App 648-649. Like other contracts, a bond is governed by its terms. *Rory*, 473 Mich at 467-470.

The payment bond provided that Western's obligations to a claimant under the bond arose if the claimant furnished written notice of nonpayment to the general contractor "within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim[]" and "sent a Claim to the Surety . . . ." Additionally, Section 12 of the payment bond provided that no action could be commenced under the payment bond "after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety" as outlined above, or "(2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs."

The trial court did not err in granting summary disposition of Standard Electric's payment bond claim because it was time barred. Here, we consider the issue under Section 12.1 because regardless of the notice date, the notice occurred well before the triggering date provided in Section 12.2 (when the last labor or service "was performed by anyone" on the project). This makes the notice date, rather than the last date of labor or supplies, the earlier of the two triggering dates, and the date that controls. Relying on Section 12.1, Standard Electric had until September 9, 2020 to file its complaint because, on September 9, 2019, Standard Electric sent a notice of nonpayment to Siwek, as well as a claim to Western. Neither complaint—the original or amended—was filed by that date. As a result, Standard Electric's payment bond claim was time barred and the trial court properly dismissed this claim with respect to all defendants.

Standard Electric also argues that Western failed to comply with the relevant notice requirements and instead "issued a 'Release of Lien Bond' in the dark of night." It argues that the statutory six-year limitation period should apply, rather than the shortened period provided in the contract, because Western failed to comply with these notice requirements. Alternatively, Standard Electric argues that the one-year limitation period should have started from the date it received notice of the Release of Lien Bond. Under either position, the crux of Standard Electric's argument is that it was not given proper notice of the release of lien bond; therefore, it is entitled to an extended period of limitations related to its bond claim.

We are not convinced. The release of lien bond was issued on December 5, 2019, and this bond provided it would expire unless Standard Electric brought suit to collect on it by November 15, 2020. Standard Electric argues that it did not receive notice of the release of lien bond until January 5, 2021, and it supports this assertion through reference to an e-mail its attorney received on that day. But Standard Electric has presented no evidence, aside from bare assertions, that this e-mail was the first time it received such notice. Further, the duty to provide notice was the county clerk's. Relative to payment bonds, the CLA explicitly imposes a notice requirement on the county

clerk. See MCL 570.1116(2) (providing that the county clerk shall notify each lien claimant that a bond has been filed and indicate the amount of the bond and the surety within 10 days after receiving the bond). It does not impose a similarly explicit notice requirement for sureties or their principals. Compare MCL 570.1116(2) with MCL 570.1116(1) (providing for discharge of a claim of lien when a bond, with the lien claimant as obligee, is filed with the county clerk "and a copy is given to the obligee lien claimant").[4] Even if the Court were to interpret the CLA as imposing a notice requirement on sureties or principals, Standard Electric's argument regarding notice fails for two reasons. First, and most importantly, Standard Electric did not provide the trial court with sufficient evidence that it did not receive notice. In support, Standard Electric provided a single e-mail dated January 5, 2021, referencing the release of lien bond. At best, the e-mail is unclear. Standard Electric did not provide an affidavit or other evidence to support its claim that it did not receive notice of the bond. Second, it has failed to cite authority in support of its proposition that the purportedly imperfect notice either nullifies or extends the contractual limitations period provided in the bond.

In sum, the trial court did not err in granting summary disposition related to Standard Electric's bond claim because it was time barred.

## C. UNJUST ENRICHMENT, BREACH OF CONTRACT, AND FRAUD CLAIMS

When deciding Western's motion for summary disposition, the trial court did not address Standard Electric's claims for unjust enrichment, breach of contract, or fraud. The breach of contract claim related to Markee Electric only, and the fraud claim related to the Markee defendants. At the hearing on Western's dispositive motion, the trial court specifically stated it was "not going to make a ruling with regard to [the unjust enrichment claim]" because it did not "necessar[ily] apply to this motion," and stated it would not address the breach of contract or fraud claims because "they were related to Markee Electric only I think." Approximately a month after dismissing the CLA and bond claims, the trial court entered a stipulated order dismissing Standard Electric's unjust enrichment claim. There is no indication in the record that the breach of contract or fraud claims were ever dismissed. The parties, however, have indicated that the Markee defendants are out of business, and Standard Electric no longer appears to be pursuing these claims.

## IV. MOTION TO SET ASIDE DEFAULT JUDGMENT

---

[4] We acknowledge that MCL 570.1116(1) provides that the claim of lien of a supplier "may at any time be vacated and discharged if a bond, with the lien clamant as obligee, is filed with the county clerk ...*and a copy is given to the obligee lien claimant*." The statute does not specify who is responsible for giving a copy to the obligee lien claimant, how it differs from the clerk's notice requirement in MCL 570.1116(2), or the effect of failing to give a copy. It is unnecessary for us to answer these questions in this case. At best, MCL 570.1116(1) requires the bond filer (i.e., surety, or principal) to provide the lien claimant with a copy, and a failure to do so prevents the bond from vacating and discharging an otherwise valid lien. Here, this would require Standard Electric to proceed only on its lien foreclosure claim, which, as discussed earlier was time barred if it was not vacated and discharged.

Standard Electric argues that the trial court abused its discretion by granting Western's motion to set aside the default. Because Western's liability is coextensive with Siwek's liability, and because Siwek is not liable, this issue is moot.

We decline to address this issue because it is moot.[5] While a default settles the question of liability and precludes the defaulting party from litigating that issue, a default does not settle the issue of damages. *Lakeside Retreats LLC v Camp No Counselors LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355779); slip op at 4-5. "[A]s a matter of law, the liability of [a surety] is coextensive with the liability of the principal . . . ." *Ferndale v Florence Cement Co*, 269 Mich App 452, 462; 712 NW2d 522 (2006) (quotation marks, citations, and alterations omitted). Here, Western's liability is coextensive with Siwek. See *id.* Because we have concluded that summary disposition was properly granted in favor of Siwek, Western, as surety, is not liable for damages. See *Ackron Contracting Co v Oakland Co*, 108 Mich App 767, 771-772; 310 NW2d 874 (1981).[6] "An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief." *Warren v Detroit*, 261 Mich App 165, 166 n 1; 680 NW2d 57 (2004) (quotation marks and citation omitted). In this case, regardless of whether the default should have been set aside, the fact that the trial court properly granted summary disposition of the CLA and bond claims has rendered it impossible for this Court to grant relief. See *Ackron*, 108 Mich App at 771-772, 776. Therefore, this issue "presents only abstract questions of law" and is moot. *Ryan v Ryan*, 260 Mich App 315, 330; 677 NW2d 889 (2004).

---

[5] We note, however, that the trial court may have erred in its handling of the default issue. "A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and a statement of facts showing a meritorious defense . . . is filed." MCR 2.603(D)(1). In determining whether good cause has been shown, the trial court should consider several factors, as articulated in *Shawl v Spence Bros, Inc*, 280 Mich 213, 238; 760 NW2d 674 (2008). Here, the trial court did not review the *Shawl* factors and, instead, the sole basis upon which it found good cause to set aside the default was that the parties had engaged in prelitigation discussions. This is not an explicit factor contemplated by *Shawl* and, thus, we question whether—as the sole fact considered by the trial court in setting aside the default—this was a sufficient basis for finding good cause to set aside the default. Ultimately, however, resolution of this question is unnecessary because the issue of default is moot.

[6] Opinions issued by this Court before November 1, 1990, are not binding but may be considered for their persuasiveness. MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012). *Ackron* is a nonbinding opinion of this Court. See MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App at 299 n 1. We find it persuasive due to a similar factual background to this case. See *Ackron*, 108 Mich App at 770-772. There, the trial court entered a default judgment against a surety. *Id*. at 771. The trial court ordered damages related to an alleged breach of contract, prior to reaching the merits of the underlying suit between its principal, the contractor, and the complainant. *Id*. at 772. This Court reversed, holding that damages could not be determined until after the rights of the principal and the complainant were litigated. *Id*. at 776. This Court reasoned that doing so would avoid the anomaly of ordering the surety to compensate the complainant for costs related to an alleged breach of contract, only to later determine that there was no breach. *Id*. Similarly, here, where Siwek is not liable due to the grant of summary disposition, Western's liability is no longer an issue.

"Generally, this Court need not reach moot issues or declare legal principles that have no practical effect on the case unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Id.* (quotation marks and citation omitted). There is no basis upon which to conclude that the issue of whether the court should have set aside Western's default is of public significance or is likely to recur. Therefore, the issue is moot.

        Affirmed.


                         /s/ Michael J. Kelly
                         /s/ Thomas C. Cameron
                         /s/ Noah P. Hood